## Petroleum Exploration v. McGeorge, et al.

(Decided June 15, 1928.)

### Appeal from Estill Circuit Court.

1.  Eminent Domain.—Award of $1,500 for easement for pipe line on strip 15 feet wide and 3,267 feet long, together with a lot 50 by 50 feet on which a shed was erected, consisting of over 18 per cent. of total value of farm containing 228 acres, held grossly excessive.

2.  Eminent Domain.—Breaking lines of tiling in constructing pipe line on property condemned constituted only a temporary damage for which compensation was recoverable in accordance with rule governing temporary damage, and condemnor was entitled to instruction to that effect.

3.  Eminent Domain.—Where at time of sale of farm pipe line subsequently laid across farm had not been definitely located, though several preliminary surveys had been run, right of action for damages to remainder of farm for taking of property for pipe line belonged to purchaser, the vendor having right of action in such cases only when work has progressed to such an extent to make it reasonably certain that it will be completed.

E. C. O'REAR and ALLEN PREWITT for appellant.

RIDDLE & SHUMATE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

By this condemnation suit, the appellant undertook to condemn an easement through the appellees' farm for the purpose of constructing and maintaining thereon a pipe line for natural gas and a service telephone line. The easement sought and secured consists of the right to construct and maintain the pipe line and such additional ones as might thereafter be desired in a space 15 feet wide and 3,267 feet long through the appellees' farm. The pipe line itself is buried 3 feet and more in the ground. The telephone line consists of the usual wires strung upon 25 poles, of which 11 are located in the bottom land of appellees' farm, and 14 on the hillside where the land is very poor and thin. The appellant has the right of ingress to and egress from the strip in question for the purpose of the maintenance and inspection of the pipe and telephone lines. Subject to these rights of the appellant, the appellees continue in the ownership and use of the strip in question. In addition to this easement, the appellant also sought and secured a lot 50 by 50 feet

where the pipe line enters the appellees' farm. This lot comprises in part the 15-foot strip above mentioned. On this lot is erected a shed inclosing a pressure governor and meter. The commissioners appointed by the county court awarded the appellees the sum of $100 for the value of the easement and lot taken, and $50 for damages to the remainder of the farm, occasioned by the presence of the easement. On exceptions filed by the appellees, the jury in the county court awarded appellees $150 for the value of the easement and lot taken, and $350 for damages to the remainder of the farm. The appellant thereupon paid this sum into court, took possession of the easement and lot, and constructed its pipe and telephone lines. The appellees appealed to the circuit court, and there the jury fixed the value of the easement and lot taken at $600 and the damages to the rest of the farm at $900. From the judgment of $1,500 entered on this verdict, this appeal is prosecuted.

Appellant first insists that the damages awarded are grossly excessive. The appellees bought this farm of 228 acres just prior to the construction of the pipe line through it for the sum of $8,000. From all the evidence in this record, this seems to have been its fair cash value at that time. Had the appellant taken exclusive ownership or possession of the entire 15-foot strip through the appellees' farm, it would have taken less than an acre and a half. The lot actually taken added but little to this. The buildings on appellees' farm which were not touched by this pipe line seem from this evidence to have been worth about one-third of the entire value of the farm. It is apparent that the actual value of the strip in question, had the appellant taken the entire fee in it, could not have exceeded $150. The appellant, however, did not take the entire fee or exclusive possession of the strip except the small lot, for, subject to its right of patrol and maintenance, the landowner had the right to use the strip for grazing or cultivation, which right was worth something. The jury, however, awarded appellees the sum of $600 on this account. About the only damage done to the remainder of the farm consisted, first, in the fact that, during the construction of the pipe line, 8 lines of tiling which drained the upper bottom land were broken. There is some evidence to show that this tiling had not been properly repaired, for which reason water stood upon the upper bottom, destroying temporarily its fertility. How-

ever, the evidence also shows that this tiling can be repaired adequately at a cost not exceeding $30 or $40, and that if so repaired the water will stand no longer on these upper bottom lands.  The only other damage which was shown would result to the rest of the farm by the taking of this easement was the inconvenience which would be incurred in the cultivation of the farm on account of having to cross the strip in question, which cut across the back end of the farm, and of having to plow and cultivate around the telephone poles.  The jury awarded the appellees $900 on this score, or almost one-eighth of the value of the farm.  The evidence they offer to support that valuation is unsatisfactory—the witnesses, in part, basing their testimony on the idea that the damage done the tiling constituted a permanent damage, although, as we have seen, it was one readily repairable and at a small cost.  In Kentucky-Tennessee Light & Power Co. v. Shanklin, 219 Ky 279, 292 S. W. 790, we said:

> "It is uniformly held that the opinion of witnesses who are familiar with land values is competent evidence in cases of this character, but the value of their testimony depends on the facts upon which their opinions are based; and we have held that unless based on sufficient facts the probative weight of their testimony is weakened, and the court will more readily set aside a verdict based thereon as being against the weight of the evidence, than it will in cases where there is a conflict of evidence upon primary facts.  See Ky. Hydro-Electric Co. v. Reister, 216 Ky. 303, 287 S. W. 357, and cases there cited. Here the entire strip condemned embraces only four acres.  If this had been wholly and permanently taken, its value as fixed by him did not exceed $180. The land actually appropriated for the purpose of the poles was not over one-seventieth of an acre. He has the possession and use of the other 3 69/70 acres, subject to the right of entry by appellant for the purpose of maintaining its lines.  As defendant is put to no expense and the principal direct damage to the remainder of the farm is the presence of the line and the natural aversion of a landowner to the presence of the company's employees upon his premises and the undefined apprehension of danger from the proximity of the power lines, we think $850, or

approximately 20 per cent. of the gross value of the farm, is excessive."

In Kentucky Utilities Co. v. Hunt, 221 Ky. 723, 299 S. W. 562, $200 was awarded for an easement taken in 1½ acres of land, and $800 for damages resulting to the rest of the farm of 150 acres, worth $90 an acre. The verdict was held excessive.

In the light of these cases, the character of the land, the easement taken, the locus of the easement, the character of the damage done the rest of the land, and the unsatisfactory evidence of the appellees as to the value of such damages, we are constrained to hold that the verdict of $1,500, or over 18 per cent. of the total value of the farm, is grossly excessive.

As the case must be tried again, it is proper to consider the objections urged by the appellant to the instructions which the court gave. Appellant says, first, that it was entitled to an instruction concerning the relative rights of the appellant and appellees in the strip of land in question. Appellant's rights, however, were thoroughly safeguarded in this connection by instructions Nos. 1 and 2 given by the court.

Appellant next says that, under the peculiar circumstances of this case, it was entitled to an instruction to the effect that the damage caused the remainder of the farm by the breaking of the lines of tiling was not a permanent damage, but only a temporary one for which compensation could only be allowed in accordance with the rule governing temporary damage. In this appellant is correct, and the court will so instruct the jury on the next trial.

Appellant lastly urges that the court should have instructed the jury that appellees were not entitled to any incidental damages to the remainder of the farm in that the appellees had bought the farm after it had become notorious that the pipe line was going through the farm, for which reason the right of action for any such incidental damage belonged to appellees' vendor. Appellant cites the case of L. & N. R. Co. v. Lambert, 110 S. W. 305, 33 Ky. Law Rep. 199, to sustain its position. The rule of that case, however, is that the right of action such as the one here involved is in the vendor of the land, and not the vendee, when the work has progressed to such an extent as to make it reasonably certain it will be com-

pleted. The court carefully said that the case was not one for the "recovery of damages for mere threatened injury." In the instant case, at the time appellees bought this farm, all that had been done by appellant was the making of several preliminary surveys through the country, including the farm appellees were buying. It was not certain where the pipe line would be located on the farm, if, indeed, it would be located on it at all. The possible damage that might be done the farm was, at that time, highly speculative and unknown. Indeed, there might be no damage if the pipe line did not go through the farm. At the best, it was a mere threatened injury. Hence the rule invoked by the appellant has no application, and it was not entitled to the instruction requested.

For the reasons hereinbefore stated, the judgment of the lower court is reversed with instructions to grant the appellant a new trial in conformity with this opinion.