## Saulsberry et al. v. Kentucky & West Virginia Power Company.

(Decided September 25, 1928.)

(As Modified on Denial of Rehearing, November 27, 1928.)

## Appeal from Carter Circuit Court.

1. Eminent Domain.—Under Ky. Stats., secs. 838, 839, providing for condemnation proceedings, exceptions to report of commissioners must be filed at first regular term of county court after owners have been duly summoned, and case must be tried on exceptions so filed.

2. Eminent Domain.—Under Ky. Stats., secs 838, 839, when appeal is taken to circuit court from condemnation proceedings in county court case is tried de novo, but is same case as was tried in county court.

3. Eminent Domain.—Under Ky. Stats., secs. 838, 839, party in condemnation proceedings, who makes no exception to commissioner's report in county court, cannot file exceptions in circuit court unless for cause shown, and hence exceptions by power company seeking to condemn right of way, filed for first time in circuit court, had no effect on burden of proof.

4. Eminent Domain.—Where damages in condemnation proceeding in county court were fixed at $2,295, and on trial in circuit court, if no evidence had been given, judgment would have been entered for $1,000 damages, fixed in commissioner's report, landowner would be party defeated on appeal, under Civil Code of Practice, sec. 526, if no evidence had been given, and hence landowner had burden of proof in circuit court, as well as in county court.

5. Eminent Domain.—In proceedings to condemn right of way over land for power line, under Ky. Stats., sec. 835-840, 1599b, landowner was entitled to compensation for land in condition at time it was taken, including timber growing on land, which was part of land.

6. Eminent Domain.—In proceedings to condemn right of way over land for power line under Ky. Stats., secs. 835-840, 1599b, instruction that measure of damages is actual reasonable market value of land taken "as of this date" was error, as requiring finding of value at date of trial, but should have required finding of value as of date when land was taken.

7. Eminent Domain.—In proceedings to condemn right of way over land for power line, owner of property taken may show value of timber standing on land, and anything on or in land making it valuable, since jury, in determining value of land, should take into consideration all facts.

8. Eminent Domain.—In proceedings to condemn right of way over land for power line, instruction stating that no timber was being

sought on property, but merely right to cut some where it inter-
fered with construction of line, was improper, since propety owner
was entitled to property as it was when taken under right of
eminent domain and to just compensation for property taken, and
cutting of trees from land was in effect taking or conversion of
trees, and landowner could not be required to take cut timber.

9.   Evidence.—Ordinarily, property owners who have lived for some
time in vicinity and know property are qualified to testify to its
value.

10.  Evidence.—Farmers generally know value of farm land, and may
testify to its value, where they know how such lands are valued
in vicinity.

11.  Evidence.—Persons who deal in timber and know its value from
business experience may testify to its value.

12.  Eminent Domain.—In proceedings to condemn right of way over
land for power line, fact that no sales had been made of such
property in vicinity because one company owned fire clay rights
and did not sell anything is only a circumstance to be considered
by jury in weighing evidence of value.

DYSARD & MILLER and CARLTON COUNTS for appellants.

JOHN M. THEOBALD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Appellants owned 600 acres of land in Carter county.
Appellees instituted an action in the county court to con-
demn a right of way 100 feet wide, 9,981 feet long, across
the tract, containing 22.95 acres, for its high-power elec-
tric line, under section 1599b, Kentucky Statutes, which
provides that the proceedings shall be in conformity to
sections 835-840, Kentucky Statutes. Commissioners
were appointed, who fixed the damages at $1,000. The
landowners filed exceptions to the commissioners' report
in the county court, and, the case being heard before a
jury, there was a verdict fixing the damages at $2,295.
The landowners declined to accept the money. The com-
pany paid the amount into court and took possession of
the property. Both parties then took an appeal to the
circuit court. In the circuit court, the company filed ex-
ceptions to the commissioners' report on the ground that
the amount allowed was excessive, and, when the case
came on for trial, asked that the company be adjudged
the burden of proof. The landowners objected, but the
motion was sustained. The jury in the circuit court,
after viewing the property, fixed the damages at $1,600.

The circuit court entered judgment pursuant to the verdict. The landowners appeal.

In Shelbyville Turnpike Co. v. L. & N. R. R. Co., 51 S. W. 805, 21 Ky. Law Rep. 548, where both the landowner and the company filed exceptions in the county court to the commissioners' report, it was held, when the case reached the circuit court, that the burden of proof rested on the company, and this was followed in Calor Oil Co. v. Franzell (Ky.) 122 S. W. 188. But in Chicago, etc., Railroad Co. v. Rottgering, 83 S. W. 584, 26 Ky. Law Rep. 1167, it was held that the landowner, who alone excepted to the award of damages by the commissioners, was properly allowed the burden of proof and the right to the closing argument to the jury. Sections 838-839 provide:

> "At the first regular term of the county court, after the owners shall have been summoned the length of time prescribed by the Civil Code of Practice before an answer is required, it shall be the duty of the court to examine said report, and if it shall appear to be in conformity to this law, and to the extent that no exceptions have been filed thereto by either party, it shall confirm said report as against the owners not excepting.
>
> "When exceptions shall be filed by either party, the court shall forthwith cause a jury to be impaneled to try the issues of fact made by the exceptions. . . . Either party may appeal to the circuit court, by executing bond as required in other cases, within thirty days and the appeal shall be tried de novo, upon the confirmation of the report of the commissioners by the county court, or the assessment of damages by said court, as herein provided."

The statute clearly contemplates that the exceptions shall be filed at the first regular term of the county court after the owners have been duly summoned, and that the case shall be tried by the jury on the exceptions so filed. When an appeal is taken to the circuit court, the case is tried de novo, but it is the case that was tried in the county court. Here the company filed no exceptions in the county court, and was willing to accept the report of the commissioners. For the first time it filed exceptions in the circuit court simply for the purpose of obtaining the burden of proof and the right to the concluding argument in the circuit court. The statute clearly was intended to provide an expeditious mode for settling

the rights of the parties at the first term of the county court, after the parties were before the court. It does not contemplate that the party who makes no exception to the commissioners' report in the county court should be allowed to file exceptions in the circuit court, unless for cause shown, for in this way the settlement of the case might be greatly delayed, and the purpose of fixing the time when the exceptions should be filed would be defeated. The exceptions in this case, filed in the circuit court only, had no effect on the burden of proof. To permit such a practice would defeat the plain intent of the statute. The landowners should have been adjudged the burden of proof in the circuit court just as they were in the county court.

Section 526 of the Civil Code provides:

"The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

As by the judgment in the county court the damages were fixed as $2,295, and as on the trial in the circuit court, if no evidence had been given, a judgment would have been entered fixing the damages at the amount fixed in the commissioners' report, $1,000, plainly the landowners would be the party who was defeated on the appeal, if no evidence had been given, for in that event the landowners would have received $1,295 less than they would have received under the judgment of the county court, from which they had appealed. Clearly, therefore, the landowners would be in substance the party who would be defeated on the appeal, if no evidence had been given. In cases like this the court must look at substance not form.

At the conclusion of the evidence, among other things, the court gave the jury this instruction:

"(2) The court instructs the jury that the measure of damages in this case for the taking of the property in controversy for the uses sought in the petition is the actual, fair, and reasonable market value of the land taken, as of this date, and, in addition thereto, such a sum as will reasonably compensate the defendants for the damages, if any, done to the remainder of the tract in controversy, considering the easement and use sought thereover. The entire amount of your finding, however, shall not exceed the difference between the actual market

value of the entire tract immediately before and the market value of what is left immediately after the taking, considering the prudent construction and operation of the transmission line in question. The jury will state the value of the land actually taken and the damages, if any, to the remainder of the tract, separately.''

The proof on the trial showed that the company had entered on the land after the judgment of the county court and had cut on it 1,382 trees from 6 to 9 inches in diameter, 777 trees from 10 to 17 inches in diameter, and 490 trees 18 or more inches in diameter. The necessary effect of the instruction was that the jury could allow nothing for this timber, for the jury were told to find the actual, fair, and reasonable market value of the land taken ''as of this date,'' the date of the trial, which was on May 3, 1927, when the judgment of the county court was entered on January 17, 1927, and all this timber had been cut from this land in the meantime. The timber growing on the land was a part of the land. To take the land was to take the timber which was growing on it and a part of it. The plaintiffs were entitled to compensation for the land in its condition at the time it was taken. Pollock v. Maysville, etc., R. R. Co., 103 Ky. 84, 44 S. W. 359, 19 Ky. Law Rep. 1717; Big Sandy R. Co. v. Dils, 120 Ky. 563, 87 S. W. 310, 27 Ky. Law Rep. 952; Calor Oil Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 33 Ky. Law Rep. 98, 36 L. R. A. (N. S.) 456; L. & N. R. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983; David v. Louisville & I. R. Co., 158 Ky. 721, 166 S. W. 230; Himlar Coal Co. v. Kirk, 224 Ky. 383, 6 S. W. (2d) 480, and cases cited.

Instead of the words ''as of this date'' the court should have inserted these words: ''as of the date it was taken.'' The timber being a part of the land taken the property owner may show the value of the timber standing on the land, and he may also show that the land has fire clay in it or coal or any other substance giving it value; for the value of the land depends upon such things. Anything on the land or in the land making it valuable may be shown, for, in determining the value of the land, the jury should take into consideration all the facts.

''In condemnation proceedings, landowners should be allowed to show all facts existing before the taking which a seller would adduce in attempting to make a sale

and all facts resulting from the taking to which a purchaser would call attention in an effort to beat down the price." Kentucky Hydro-Electric Co. v. Reister, 216 Ky. 303, 309, 287 S. W. 357, 359.

"All of the surrounding circumstances may be taken into consideration in establishing the fair market value of a tract of land." Chicago, St. L. & N. O. Ry. Co. v. Ware, 220 Ky. 778, 295 S. W. 1000.

In the first instruction to the jury, the court, after defining the rights of the company in the strip of land taken, added these words:

> "No timber is being sought on the property in question, but merely the right to cut the same where it interferes with the prudent and careful construction and operation of the line."

This should have been omitted from the instruction. The property owner was entitled to his property as it was when it was taken under the right of eminent domain, and he was entitled under the Constitution to just compensation for the property taken. To cut the trees from the land was to take them, for they were no longer part of the land. To require the landowner to accept the cut timber and place on him the burden of taking care of it is not to give him just compensation for the taking of his property, but to place a burden on him which cannot be done under the Constitution. The cutting of the trees from the land was a conversion of the trees.

In Ky.-Tenn. Light & Power Co. v. Shanklin, 219 Ky. 279, 292 S. W. 790, the lower court, in the instruction defining the rights of the parties, used, in substance, these words:

> "Subject to the aforesaid rights of plaintiff, the defendants have the right to cultivate and use said land and have the fee-simple title to same."

This instruction was there approved, and on another trial the court will give an instruction in these words, and mark it "No. 2." In that case the court directed the instruction on the measure of damages to be given in these words:

> "You will find for the defendant such a sum in damages as you may believe from the evidence is the fair and reasonable market value of the strip of land taken for the easement, less the reasonable market value of such strip of land for use and occupancy,

subject to the easement, as defined in instructions No. 1 and No. 2. And will further award him such direct damages, if any, as you may believe from the evidence will result to the remainder of the tract of land by reason of the condition in which it is left by the placing of the easement on the strip above described, but the total amount found shall not exceed the difference between the fair and reasonable market value of the entire farm immediately before and immediately after taking by the plaintiff of the easement, nor the amount claimed in the petition, $1,-400.''

In this case, as the land is not in the condition it was when taken, these words should be added after the word ''easement,'' ''at the time the land was taken,'' and the court will otherwise make instruction 2, given on the former trial, conform, in substance, with the instruction above quoted, and mark it ''No. 3.''

Ordinarily property owners who have lived for some time in the vicinity and know the property are qualified to testify to its value. Farmers generally know the value of farm land, and may testify to its value where they know how such lands are valued in the vicinity. Persons who deal in timber and so know its value from business experience may testify to its value. See Himlar Coal Co. v. Kirk, 224 Ky. 385, 6 S. W. (2d) 480, and cases cited; 11 R. C. L. pp. 636-638. The fact that no sales have been made of such property in the vicinity because as here one company owns the fire clay rights, and does not sell anything, is only a circumstance to be considered by the jury in weighing the evidence.

In Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 631, 287 S. W. 990, the court, after holding that a mere ill-defined apprehension that in the future some misfortune might come could not be considered, added this:

''But if such fears be reasonable, not ill-defined, but founded on practical experience, and if they be entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property? The property owner is to be paid for his actual damage. If he cannot sell his property at as good a figure with this line on it as he could without it by reason of reasonable fears, not speculative, but founded on experience, and en-

tertained by those who wish to buy, has he not been damaged in this regard? It is no fault of his that the line has been erected. Under such assumed state of facts, his land has been depreciated on account of such fear on the part of buyers. Those who cause such damage should pay for it.''

On another trial the court will adhere to this rule in the admission of evidence on this subject.

Judgment reversed, and cause remanded for a new trial.