## Hoskins v. Commonwealth.

Jan. 30, 1942.
Rehearing Denied May 15, 1942.

M. C. Begley, C. W. Hoskins, J. L. Dixon and J. E. Campbell for appellant.

J. H. Asher and L. D. Lewis for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This is an appeal from a judgment of the Leslie circuit court, following verdict of the jury awarding appellant $2,500 for land taken and consequential damages, for the purpose of building a state highway between Harlan and Hyden. Appellant owned more than 1,000 acres in Leslie County, the greater portion being hilly and timbered, not subject to cultivation. The particular portion through which the right of way runs is bottom and foothill land, and this acreage stretches along the river the full boundary length.

There seems to be no conflict in the evidence as to the quantity of land actually taken, or property and land injured by the taking. Appellee in brief admits that the right of way takes about 24 acres of land, the greater part hillsides, but about eight to nine acres of level land, and that the right of way through appellant's land is

more than two miles in length. The level land is not in one parcel, but broken at points by the foothills which reach the river. The level land is narrow, running on an average of 150 or 160 feet to the foothills. The quantity of land taken is greater than ordinarily required, because of the number of side cuts into the hills, and consequent fills on the lower sides of the right of way.

A plat and deed filed shows the right to be 60 feet wide for the entire distance, additional land being taken for side cuts and fills, running from extra widths of 10 to more than 100 feet between designated stations.

The first location of the Hyden-Harlan highway was made in 1936, and a portion of each end of the road was constructed. Upon this first survey the right of way across appellant's lands was on the east side of the river. Some time after the original location the Highway Department, by its engineers, relocated the right of way, and in so doing the old route was followed from appellant's southern property line for a distance of about 4,500 feet, and at that point a bridge was located, taking the right across the bridge to the west side of the river, and from that point to appellant's northern boundary.

Following the relocation the Commonwealth filed in the county court its petition showing pertinent facts, including the necessity for the land for highway purposes. It was shown in the record that the county attorney of Leslie County was a son of appellant, the owner of the land, and the court appointed two other attorneys to represent condemnors, and appointed commissioners. In due time these officers filed report, allowing for the land taken, $1,400, and damage to the remainder by reason of the taking, $250, a total of $1,650.

Appellant filed exceptions in which he charged that the commissioners appointed, by reason of relationship to counsel, and members of the fiscal court, were biased and prejudiced against the landowner; that their appraisal was unfair; that their view of the land was merely a pretense. It was also complained that the valuations fixed by the commissioners was out of proportion to real values, both as to land taken and consequent damages, the exception fixing the total at something like $6,000.

A trial upon exceptions resulted in a verdict finding for appellant "a damage of $4,000." Upon appeal by

condemnor to the circuit court, and after a hearing on exceptions, the jury returned the following verdict: "We the jury do agree and give the defendant $2500," and judgment was entered accordingly.

Thereafter the landowner filed motion for a new trial, in which he advanced six or more grounds, and such as are discussed in appellant's brief will be considered. It is insisted that the verdict was too small, and flagrantly against the evidence; that the court refused to admit competent and relevant evidence; the instructions given by the court were erroneous and prejudicial to appellant, and lastly, that the court committed error in refusing to dismiss the appeal from the county court judgment.

Before we reach the main question, i. e., the verdict is flagrantly against the evidence, we will take up the technical grounds. It is first argued that the appeal should have been dismissed, and a directed verdict ordered for defendant at the close of the evidence, because the procedure was not begun or carried out in accordance with statutory provisions. The complaint as to the suit having been prosecuted by outside attorneys is waived; attention was directed to Section 4356t-12, Kentucky Stats., which provides that "all condemnation proceedings hereunder shall be in the manner provided by law for the condemnation of land for railroads," and Section 835, Kentucky Statutes, relating to condemnation for railroad purposes, provides that where parties are unable to agree, the condemnor may apply to the county court for appointment of commissioners, and for proceedings conforming to the statute. The case of Howard Realty Co. v. Paducah & Ill. R. Co., 182 Ky. 494, 206 S. W. 774, is cited as showing that we held that in order to support the movement to condemn land for railroad purposes, it was necessary to show that a good faith attempt had been made to contract agreeably and failed.

The petition alleges that although effort had been made "it has been unable to contract with or purchase the said land from the defendant at a reasonable price." This allegation was denied, and the meager proof on the question shows a lack of effort to contract for the land appropriated for the right of way after relocation. The plea might be good, and the argument sound, were it not for the record fact, that following the trial in the county court the landowner executed his deed for the right of

way, and accepted the amount awarded him by the jury in the county court, and the department proceeded with construction.

If there was a failure of previous agreement or effort to contract, this might have invalidated the proceedings, but under the circumstances shown this would result in a situation where the property owner could maintain action for the taking of his land, the procedure to be the same as in the exercising of rights under eminent domain. Breathitt County v. Hudson, 265 Ky. 21, 95 S. W. (2d) 1132.

If the suit or proceedings were not in full accord with the provisions of the Statutes, relating to the taking of land for highway purposes, then it amounted to a taking without following legal steps required. Metcalf v. Lyttle, 219 Ky. 488, 293 S. W. 979; Mercer County v. Ballinger, 238 Ky. 120, 36 S. W. (2d) 856. Here the owner not only stood by and saw his land taken, but executed a deed and accepted the consideration, and he should not now say that procedure was not strictly according to statutory provisions. Crittenden County v. Towery, 264 Ky. 606, 95 S. W. (2d) 233.

We take up next the contention that the court refused to admit evidence which would have tended to show that the witnesses for defendant, or some of them, were biased or prejudiced. The county judge was testifying and was asked if he appointed the commissioners ''in this case;'' objection was sustained, without avowal, though it must have been obvious to the jury that the commissioners were appointed by the county judge. The difficulty here is that the matter was pursued no further. There was neither question nor avowal in reference to any activity of the judge or commissioners. Nick Lewis, one of the commissioners, was asked: ''What relation is Dill Asher (one of the commissioners) to John Asher, one of the attorneys for plaintiff?'' Objection was sustained; no avowal and no further pursuit of the attempt to show bias. It is unnecessary to comment further as to this contention.

The instructions given by the court are criticised from several standpoints. The first objection noted is that part of the instruction which interpolated the figures $1,650 as the minimum, and this was the sum allowed by the commissioners. It is complained that there was no evidence before the court showing that the commission-

ers had allowed that sum. While it was not necessary to incorporate the figures, there was no error, since a summary of the proof by plaintiff would indicate a valuation of land taken, costs or removal of buildings, and erecting fences, etc., at somewhat less, certainly not more, than $1,650, and the verdict was for $2,500.

It is said that the instruction was erroneous because omitting the charge, ''You will exclude from both estimates any enhancements, if any, in the valuation of the remainder by reason of the construction and use of the highway.'' The owner offered no instruction on this point. It is also complained that the instructions erroneously omitted:

> ''You will find and state separately in your verdict the amount awarded for the land taken from the damage awarded for the remainder of the tract, if any.''

This was not asked, and there was no effort to cure the verdict. Adams v. Com., 285 Ky. 38, 146 S. W. (2d) 7. We think the instructions as a whole were correct.

It is claimed in brief that the right of way takes practically all the good farming land of the entire acreage. If there were 200 acres of this river bounded tract, this could not be correct. The great difficulty we have had is lack of competent, relevant convincing proof as to values. This is of frequent occurrence in cases of this nature, making it difficult to reach conclusions as to values, or to determine whether or not a jury reached as nearly as possible a correct determination.

Likewise it is difficult to understand why litigants in this class of cases, present these cases to a jury, or to this court, on review, without more explanatory evidence. The owner and his son were the principal witnesses, and there is little difference in their estimates of valuations and damages, both testifying as to valuations with reference, not so much as to the entire tract, as to such portions as lay alongside the river.

From the evidence we glean that there were about eight acres of level bottom land, claimed to be suitable for building, and 15 or 16 acres of other land which could be used for cultivation, without a clear statement of quantity or character as to lands damaged by the taking. However, the chief witness based his valuation of from

three to five hundred dollars per acre, not on use for farming purposes but on values for building lots. The complaint by defendant that the court, who admitted some of this proof and rejected other, erred in not throwing the door open, is not well taken, since there was a total lack of competent proof that there was market or demand for building lots in this vicinity.

Other witnesses for defendant estimated values; some for farming and some for building purposes, at from $200 to $300 per acre. The difficulty here is that these values were not given as to any particular portion or quantity, but this was because specific questions were not directed. For instance, one would say ''that part up near Lee Hoskins' house is worth'' so much per acre. Their testimony as to resulting or consequential damages was nil, and no one, save the son and one other, undertook to estimate the difference in value of the entire tract prior to and following the taking of the right.

Defendant's proof showed that the right of way would necessitate the removal of or injury to certain buildings, some fruit trees and other appurtenances; that defendant's residence was so near the highway as to require its removal, or to cause injury if occupied without removal. This damage was placed at $200 in either case. A mill house, storehouse, barn and coal house would have to be removed; a new well dug, all of which destruction or damage was said would amount to about $750. There was also estimated a resulting damage by reason of inconvenience in defendant getting from his residence, or one portion of the land to the other, by reason of the road running through his land. The only proof of inconvenience is the statement of the fact.

Counsel's chief argument is that the verdict of the jury is flagrantly against the evidence. This has its basis, first in the fact that defendant's evidence showed much greater values, and that the evidence adduced by plaintiff did not minimize, but rather had the effect to uphold the fixed values. It is true that several of plaintiff's witnesses fixed the value of some of the bottom lands at $200 to $250 per acre, but the particular land was not identified in such a way as to show quantities. There was a divergence of opinion as to values of level bottom lands and hillside lands. Plaintiff's witnesses, to a great degree, minimized other damages, and such as testified on the point were inclined to the belief that there

was little consequential damage to the remainder of the land. The objection that the witnesses for plaintiff were not qualified to testify as to values, is of impression, but it may be observed that as a whole they were about as well qualified as were defendant's witnesses.

It may also be observed that on the all-important question, which in cases of this character fixes the maximum limit of recovery, there was a dearth of proof. The only witness for defendant who undertook this task, admitting that he did not know the value of the entire tract just prior to and immediately after the taking, nevertheless fixed the prior value at "from $12,000 to $15,000," which was reduced by $4,500 by the taking. The only other witness on this point was one brought forward by plaintiff, and who fixed the difference in value at the stated times at $2,000, and thus it may be concluded that the jury reached in its $2,500 a fair medium.

Two other facts are to some extent impressive; one is that during the progress of the trial the jury, accompanied by the court, went over the right of way and in viewing the lands and tenements, obtained a much better view of the situation, no doubt, than has been presented to us by the proof. City of Middlesboro v. Chasteen, 285 Ky. 427, 148 S. W. (2d) 295. It is also shown by plaintiff that in 1937 the entire tract of land owned by defendant was assessed at $9,050; in 1938 at $8,550, and without objection, in 1940 as follows: 1,300 acres, $1,550, farm and acreage; minerals and timber $6,500; raise of $1,000, total $9,050. That this character of evidence may be, and has been considered by the jury as an estimate of value, is not an open question, and its persuasiveness is evidenced in numerous cases, as may be observed from a reading of Louisville & N. R. Co. v. Burnam, 214 Ky. 736, 284 S. W. 391.

We conclude that the pertinent issues were presented to the jury by appropriate instructions; that the evidence was such as justified the jury in fixing valuations as was done; there were no prejudicial errors either in rejecting or admitting testimony, and that the technical errors relating to procedure, if not in strictest accord, were not to defendant's prejudice.

Judgment affirmed.