## Tennessee Gas Transmission Co. v. Million et al.

June 23, 1950.

Rehearing denied December 8, 1950.

William Baxter, Judge.

138

Hazelrigg & Cox, R. Vincent Goodlett, and John Noland for appellant.

George T. Ross for appellees.

VAN SANT, COMMISSIONER—Reversing.

The action was instituted by appellant,, Tennessee Gas Transmission Company, to condemn an easement for use and occupancy of a right of way 8,243 feet in length, and an easement of ingress and egress to and from the right of way through the remaining 231 acres of appellees' farm in Madison County. The right of way is fifty feet in width, except for a distance of 200 feet adjacent to a county road where it widens to 100 feet. The property was condemned to provide for the construction, patrol, and maintenance of a 26'' gas pipe line for the transmission of natural gas from Texas to a point in West Virginia. The same pipe line was involved in Tennessee Gas Transmission Company v. Jackman, 311 Ky. 507, 224 S.W.2d 660, and five other cases from Barren County decided in January, 1949, and in Tennessee Gas Transmission Company v. Igo, 314 Ky. 137, 234 S.W.2d 149, decided today. The opinion in the Jackman case describes the nature of the easement and the burdens imposed by the judgment on the remainder of appellees' farm, which burdens constitute some, but not all, of the elements of damage resulting to the remainder of the farm by reason of the situation in which it has been left by the taking of the right of way.

Commissioners appointed by the county court viewed the property and awarded appellees $1,806.00 for the use and occupation of the strip of land included in the right of way, and $1,450.00 as damages to the adjacent land of appellees. Both parties filed exceptions to the commissioners' award and in August, 1947,

a jury trial was held in the Madison County Court, which resulted in a verdict and judgment for appellees in the sum of $12,000.00. Appellant then prosecuted an appeal to the Madison Circuit Court, during the pendency of which, to-wit, November 1st, 1947, it commenced construction of the pipe line. The work of construction was completed about July 1st, 1948, which was prior to the trial in the circuit court.

In the eight months required to lay the line, appellant occupied and severely damaged 10.3 acres of land outside of, but adjacent to, the right of way condemned. In addition thereto, it neglected to maintain existing fences crossed by the right of way. By stipulation, it was agreed by the parties that appellees might assert a claim for damages for such injuries, to be tried with the condemnation proceedings. That agreement was carried out, resulting in consolidation of the two actions: (1) The suit by appellant to condemn the right of way, and (2) the action by appellees for damages by reason of the trespass described above.

The trial court, in instructions 1 to 4, inclusive, covered the condemnation suit; in instructions 5 to 8, inclusive, covered the second action; and in instruction 9 directed the jury to separate the amounts found under the respective groups of instructions. The jury returned the following verdict:

"We the jury find for appellees, Q. Million and Mary Lutie Million, his wife, Julian Million, Rhea B. Million and Issie Million and fix the damages to the lands of the appellees named herein and described under Instructions 1 to 4 Inclusive (Instructions to the Jury) At Three Thousand Four Hundred Fifty Eight Dollars and Fifty Cents ($3,458.50) and $8,435.00 damages to the remainder of the land.

"We fix the damage to the lands and properties described and referred to in Instructions to the jury, Items 5 to 8 inclusive, at $2,051.76.

"Albert F. Scruggs,
"Foreman of Jury."

Accompanying the verdict, and as part thereof, the jury returned a detailed report of its calculations and method of arriving at its findings. The report is in words and figures as follows:

"1. $3,458.50   For Damage to Lands Described Under Instructions 1 to 4 Inclusive

2. 10,486.76   For Damage to Properties Described under Instructions 5 to 8 inclusive

3. $13,945.26

4.   Loss of Grazing of 51 acres of Rye for two months

At $4.00 per Acre per Mo.＝$204.00 per Mo. 2 mos.         $408.00

5.   Loss of Grazing on Grass 179 Acres at 3.00 per Acre 9 Mos.＝     510.00

6.   Damage to Loss of Spring by Blasting     400.00

                              $1,318.00

7.   1. Walnut Tree & ＝ $50.00 Less $10.00＝   40.00
        Poplar Tree Timber value

8.   2. Locust Posts $22.50 Not Usable Damaged   22.50

9.   3. Shade Trees on Hill at $50.00 ea. $150.00 Not usable ＝   150.00

10.   4. 5 Acres Rye Destroyed at $20 ＝ $100.00 No Salvage   100.00

                              312.50

No. 6   25.00 labor to seed
        12.00 fertilizer

        $42.00 per acre.
        $10.03
          42.00

        2006   00
        4012

11.   421.26 for restoration of 10.03

12.   Required Fencing for Sheep —     $200.00
    and Damage to Fence

No. 4   Before Line 9.77 x $100—     977.00
        9.77 Acres
          300

13.   2931.00 — $2931.00 Less

    $977.00                 $1954.00

    10.03 Acres     10.03 x $150.00
        300
    30.0900  —  $3,009.00
             1,504.50

        1,504.50 Less

| | | | |
|---|---|---|---|
| 14. | $1504.50 | — | 1504.50 |

$3458.50

15.     Damage Direct to Lands on Right of Way
          & Lands Used Outside
                $3,458.50"

Judgment was entered in conformity with the verdict.

Appellant urges three grounds for reversal: (1) The award of $3,458.50 for the easement over the right of way is grossly excessive; (2) the award of $8,435 as resulting damages, is grossly excessive; and (3) the court erred to the prejudice of appellant's substantial rights in admitting certain evidence over its objection. The award of $2,051.76 for damages to trees and growing crops is not challenged.

The area embraced in the right of way comprises 9.77 acres. The calculation sheet returned with the verdict shows the jury found this area to have been worth $300 per acre initially, and to have been reduced in value $200 per acre by reason of the servitude. The initial evaluation and the consequent reduction are supported by the testimony of several qualified witnesses, indeed one of appellant's own witnesses placed the reduction in value at fifty per centum of its initial worth. Thus, the jury's calculations show the total damages awarded for the easement through the right of way to be $1,954.00 and not $3,458.50, as appellant contends. The difference, $1,504.50, is revealed by the jury's computation on line 14 to be the damages fixed for appellant's partial destruction of the 10.3 acres of land off the right of way, in the process of construction.

The testimony of competent and qualified witnesses amply supports this finding. The wording of the verdict itself shows $3,458.50 to have been the sum fixed for "damage direct to lands on right of way and *lands used outside*." (Our emphasis.) The prior conclusory statement in the verdict that such sum was found under instructions 1 to 4 is incorrect, not verified by the calculations, and manifestly is a clerical misprision. The sum of $2,051.76 is shown by the jury's computations to represent special damages, such as the destruction of crops, trees, etc., and properly is included within the purview of instructions 5 to 8 inclusive. No element of damage

embraced in the award of $1,504.50 is included in the award of $2,051.76, and conversely. Appellant then cannot prevail in its contention that the $3,458.50 is solely for damages to the 9.77 acres in the easement right of way, and therefore excessive.

In reviewing the award of $8,435.00 for resulting damages to the remaining 231.23 acres, we must consider the separate elements of damage which are two in number. First, in its construction of the pipe line, appellant dug drainage ditches along its right of way, and extending onto the property of appellees' outside the limits of the right of way. The evidence for appellees shows that surface waters have been diverted and caused to flow in unnatural quantities in these unnatural channels from the right of way through the drainage ditches onto the remaining lands of appellees, thereby causing erosion of the top soil; and that this condition will continue to exist with consequent increase of damage. Second, appellant, in addition to its easement on the right of way, is granted the right of ingress and egress over the entire tract to and from its pipe line. It must pay any damage occasioned off the right of way in the exercise of this right, and the burden is one which by the judgment runs with the land. Such a burden is an encroachment on the dominion, reduces the marketable value of the property, and is a damage for which compensation must be paid. Tennessee Gas Transmission Company v. Jackman, supra. It is reasonable to conclude that these burdens have reduced the marketable value of the farm to some extent; but the majority of the court is of the opinion that the witnesses who testified for appellees and the jury have exaggerated the depreciation in the value of the farm occasioned by them; and, since no other factual reason was given by the witnesses to support their opinions, the majority of the court is of the opinion that the award for resulting damages is excessive. Petroleum Exploration v. McGeorge et al., 225 Ky. 131, 7 S. W. 2d 821, and cases therein cited.

Appellant claims the court erred in permitting one of appellees' witnesses to testify as to the value of the property (as high as $800 per acre) for building sites or baby farms. Reliance is placed on Louisville & Nashville R. Co. v. Cornelius, 232 Ky. 282, 22 S. W. 2d 1033,

but that case and the present one may be distinguished. Here, the jury had before it evidence that the farm was fronting along a county road and was adjacent to the community of Newby, thus showing it to be strategically located for such purposes. In Louisville & Nashville R. Co. v. Cornelius, supra, an award of damages based on the property's value as a site for a hydro-electric plant was reversed because of the absence of evidence as to the adaptability of the property for such purpose, except that it was physically possible to use it for that purpose. It is contended, upon the authority of Hoskins v. Commonwealth, 290 Ky. 400, 161 S. W. 2d 169, that as no demand was shown in the community for building sites or baby farms, the admission of evidence as to the property's value therefor was reversible error. Hoskins v. Commonwealth, supra, merely holds that it was not error to exclude such testimony in the absence of a showing of a market or demand. Other testimony objected to was to the effect that good tobacco land is worth a thousand dollars per acre based on the return received on the investment; unnamed persons had told a witness that they would give $400 per acre for appellees' land; and that land ''on the west side of the far end'' of appellees' farm sold for $200 an acre in 1933. No exception was taken to the court's ruling on the admission of the hearsay evidence; therefore, it is not subject to review by this Court. We are of the opinion that the Trial Court would not have committed error had he excluded from the evidence all of the testimony complained of on the ground that some was incompetent and the rest irrelevant. Nevertheless, we do not consider the admission of any of the testimony complained of to have been prejudicial to appellant on this trial, because the calculations of the jury show it did not base its findings on this testimony; however, on the next trial, the court will exclude this testimony.

Finally, the point is urged that the Trial Court erred in refusing to strike the testimony of a witness for appellees relative to the value of the land in issue, after it was disclosed upon cross-examination that the witness was not entirely familiar with appellees' land. Although the testimony of this witness was weakened on cross-examination to such an extent that it was of meager probative value, we cannot say that it was utterly destroyed as a matter of law.

In the various cases before this Court instituted by appellant and other gas transmission lines to acquire right of ways, it has been suggested by counsel for the property owners, and it appears in the record in this case, that appellant is in the habit of supplementing the statutory fees allowed commissioners to appraise land, and of informing the commissioners of such fact. In this instance, the fee was raised from $1.50 to $10.00. This fact was not prejudicial to the landowner in the present proceeding, except in so far as it might have influenced two commissioners appearing as witnesses for appellant in the trial of the case. But in other cases instituted under the provisions of KRS 416.230 et seq., such practice would be deemed to be prejudicial to the landowner's substantial rights, because the just compensation referred to in Sections 13 and 242 of the Constitution has been construed to be the value placed on the property by the commissioners. Barker v. Lannert, 310 Ky. 843, 222 S. W. 2d 659. We are happy to say that it does not appear in any of the cases which we have reviewed that attorneys for the Transmission Companies have been guilty of indulging in this practice. The record in this case shows that one of the officers of appellant informed the appraisors that appellant had paid the extra compensation to the clerk to be distributed to the commissioners. The fee in cases of this character is set by law; and, although it must be conceded that it is not adequate compensation for the services to be performed, a party litigant has no greater right to pay extra compensation to a commissioner or an appraisor of property in litigation than he has to pay extra compensation to a juror sitting in the trial of the case. Should an aggrieved party seek reversal of a judgment entered in a case wherein his adversary has engaged in such practice, we would not hesitate to grant him relief; and whilst reversal of the judgment is not sought by the landowner in this case, we think it appropriate at this time to call attention to the matter.

Neither do we approve of the practice of using, as witnesses, the commissioners appointed by the court, to such an extent, that, on appointment, they may anticipate being engaged as such by the party who may be favored by their appraisal and testimony.

For the reasons stated, the judgment is reversed

with directions that it be set aside and that appellant be granted a new trial to be conducted in a manner not inconsistent with this opinion.