## Tennessee Gas Transmission Co. v. Igo et al.

June 23, 1950.

Rehearing denied December 8, 1950.

W. J. Baxter, Judge.

Hazelrigg & Cox and John Noland for appellant.

George T. Ross and G. Murray Smith, Jr., for appellees.

VAN SANT, COMMISSIONER—Reversing.

The appeal is from a judgment rendered by the Madison Circuit Court in an action to condemn a right of way and easement over appellees' farm for the construction, operation, and maintenance of a 26" gas pipe line by appellant, Tennessee Gas Transmission Company. The proceedings were instituted and conducted in accordance with the provisions of KRS 278.500 and 416.010 to 416.080 inclusive. The jury in the Circuit Court awarded damages to appellees in the sum of $16,-985.00 for the value of the right of way and resulting damages to the remaining portion of appellees' farm through which appellant has obtained the right to lay its gas pipe line. The jury did not separate the damages for the taking from those resulting, but made a lump sum award for both.

The farm consists of 575.92 acres, the right of way condemned comprising 9.14 acres of this boundary leaving 566.78 acres remaining, subject to the burdens hereinafter recited, and on account of which, appellees claim the marketable value to have been reduced. The right of way extends for a distance of approximately one and one-half miles lengthwise through the center of appellees' farm, which lies between Richmond and Lexington fronting on U. S. Highway No. 25 and bounded in the rear by an improved county road. The top soil is underlaid by strata of limestone, and a goodly portion of the land has been "in Blue Grass" for over fifty years. It appears from the testimony that the farm is one of the most valuable, acre for acre, in Madison County. Appellant introduced four witnesses and appellees eight, in respect to values and damages. We will give a brief summary of the estimates made by some of these witnesses.

George B. Smith, a resident of the state of Tennessee and employed by appellant as "Assistant Land Supervisor" was the first witness introduced on behalf of appellant and testified that in his opinion the land taken was worth $350 per acre. He visited Madison County

in the latter part of April or the first of May before the giving of his testimony in October, 1948, and stated that he had familiarized himself with the values of farm lands in Madison County by viewing the farms, attending two auction sales, and reviewing expressed considerations in deeds. He stated that in his opinion the taking of the right of way imposed no burden on the remainder of the farm; consequently, there was no resulting damage to such remainder. R. E. Baker, a former Tax Commissioner for Madison County, testified that in his opinion the farm was worth between $250 and $300 per acre, the damages by reason of taking of the land amounted to the lump sum of $3,015.00, and there was no resulting damage by reason of the burdens imposed on the remainder of the land. Mr. Baker was one of the commissioners appointed by the county court to make an original assessment of damages. S. H. Frazier, for appellant, testified that in his estimation the farm was worth $360 per acre; that the land within the right of way was damaged in the amount of $2,747.92 only, since the title to the land did not pass; and that appellees incurred no damage to the remainder of the farm by reason of the burdens imposed. He stated that he had sold land at auction in the year 1947, and that in selling land with a right of way through it, it was the practice to announce such fact at the sale. R. B. Baumstark, another of the commissioners, testified that in his opinion the land was worth $250 per acre. He stated that no damage resulted to the remainder of the farm by reason of the burdens imposed on it, but he admitted under cross-examination that he did not know whether or not an easement through a farm affects its salable value.

James Carr, a son-in-law of appellees, and manager of the farm, stated that in his opinion the farm was worth $500 per acre immediately before the acquisition of the right of way and $400 per acre immediately after it became known to the public in general that the pipe line was to be constructed through the farm. Jerry W. Parrish, a farmer operating 1200 acres of farm land owned by Mr. Arnold Hanger, testified that he had been managing that farm for sixteen years and that he had owned farms of his own. The Hanger land is on U. S. Highway No. 25 about three or four miles distant from the farm of appellees. A 24'' gas pipe line was constructed through the Hanger land almost five years before he

testified. The soils on the two farms are very much alike. Both are known in the county as "Blue Grass Land." He had tried to cultivate the land within the right of way after the pipe line was laid, but was unable to get a crop "big enough to cut." Previous to that time he had been able to raise approximately 1800 pounds of tobacco to the acre. He has attempted to rebuild the land on the right of way by fertilizing and planting it in four different kinds of grass: Blue Grass, Timothy, Korean, and Red Clover, but is unable to get a stand of grass except in low places. He planted it in tobacco one year and the land on each side of the right of way line made 1700 pounds to the acre but that planted on the right of way yielded nothing. He stated that in his opinion the farm was worth from $400 to $450 per acre immediately before the pipe line right of way was acquired and was worth from $25 to $30 per acre less, after it became known that the pipe line was to be constructed through the farm. He stated that all purchasers and sellers of real estate took into consideration the presence or absence of a gas pipe line; and, if present, the marketable value of the land was reduced in accordance with the figures recited above. M. M. Welch, lives about two and one-half miles from appellees' farm, is familiar with it, having viewed it several times. He was familiar with the values of farm lands in that vicinity from his observation of sales in that neighborhood and his general knowledge of farm lands. In his opinion the farm was worth $500 per acre before the gas pipe line was laid and was worth $400 per acre thereafter. For forty-two years previous to his engaging in farm work, he was supervisor for the Bell Telephone company, and, as such, had engaged in purchasing numerous right of ways for his company. Many witnesses introduced by appellees testified that on farms through which the 24" pipe line above referred to had been constructed, the land along the right of way was rendered untillable. Appellant complains of the testimony of three of these witnesses on the ground that they made no showing of any similarity of conditions on the farms about which they testified, and the farm of appellees. It is true that these witnesses did not testify expressly as to the similarity of the lands but their descriptions of the lands about which they were testifying were sufficient for the jury to determine that they were sufficiently similar to

that of the Igo farm to render their testimony competent for what it was worth; and other witnesses testified to the same effect specifically stating that the lands about which they were testifying were similar to that of the land of the Igo farm. We are of the opinion that appellant was not prejudiced by the testimony complained of.

We now will consider, in its various aspects, the main point relied on for reversal, viz., the award is excessive. The principal argument in respect to this contention is identical with that urged for reversal in Tennessee Gas Transmission Company v. Jackman, decided Jan. 11, 1949, which will be published in 311 Ky. 507, 224 S.W.2d 660. That argument is: that except under very unusual circumstances, which it is contended are not present in this case, there can be no damage to the adjacent land of the owner by reason of the taking of an easement of a strip of land for the construction, operation, and maintenance of a gas pipe line. It is true that the easement granted does not forbid the landowner tilling the soil within the limits of the right of way. But if he does so, he must assume the risk of such crops being destroyed by appellant in its indiscriminate right to use the right of way for maintenance and operation of the gas pipe line; and the evidence additionally shows that the right to till the soil within the limits of the right of way is one of negligible value, because crops cannot be grown thereon in sufficient abundance, or of sufficient quality, to render them profitable. Thus the evidence presented by appellees, although contradicted, shows a practical destruction of the land for farming purposes, and the jury was privileged under the evidence to find an actual taking of 9.14 acres within the limits of the right of way, at least to the amount testified to by Carr; viz., $460 per acre. The 9.14 acres at $460 per acre amounts to the sum of $4,204.40 which would leave a balance of $12,789.60 representing damages to the remaining 566.78 acres of land. The burdens imposed on this acreage are the same as those imposed on the remainder of the farm and described in the opinion in the Jackman case, supra. Those burdens, by reason of the judgment, are appurtenant to each and every portion of the farm; and no matter into how many tracts hereafter the farm may be divided and sold, the burdens imposed by the judgment will run with the land of each and every tract. These elements of alleged damage

could not be considered unless it appeared in the evidence that they actually affect the marketable value of land in that vicinity. The right to enter and traverse the land of another at any point and at any time is an infringement on the dominion. It is a right which might be called an estate carved out of the fee, and whilst the owner of the land may forbid others to enter upon the land, he cannot enforce such an edict against appellant or its assigns. Thus the fee simple title to the land is subject to an over-all easement, which, since it is not opposed to public policy, runs with the land.

It is reasonable to conclude that these burdens have reduced the marketable value of the farm to some extent; but the majority of the court is of the opinion that the jury and the witnesses who testified for appellees have exaggerated the depreciation in the value of the farm by reason of this sole element of damage; and, since no other factual reason was given by the witnesses to support their opinions, the majority of the court is of the opinion that the award for resulting damages is excessive. Petroleum Exploration v. McGeorge et al., 225 Ky. 131, 7 S. W. 2d 821, and cases therein cited.

Wherefore the judgment is reversed with directions that it be set aside and that appellant be granted a new trial.