# Louisville & Nashville Railroad Company v. White Villa Club.

## (Decided October 23, 1913).

Appeal from Kenton Circuit Court.    ◡

(Common Law and Equity Division).

1. Eminent Domain—Assessment of Property as Evidence.—In condemnation proceedings it is competent as a relevant circumstance to show the price at which the owner of the property listed it for taxation, or, if his testimony cannot be procured, to show by the assessing officer the value at which it was given in for assessment by the owner.

2. Eminent Domain—Measure of Damage—Construction.—The measure of damages to which the owner of property is entitled where the whole property is not taken is the fair and reasonable market value of the land taken, considering it in relation to the entire tract and for all purposes for which it is adapted, and also such sum as will compensate the owner for the direct damage, if any, that results to the remainder of the tract by reason of the situation or condition in which it is left by the taking of the part taken. But the whole amount of damage should not exceed in all the difference between the actual market value of the entire tract immediately before and the actual market value of the remainder immediately after the taking.

3. Eminent Domain—Evidence—Value of and Damage to Improvements.—It is competent to ask witnesses as to the condition, character and surroundings of the property proposed to be taken, as well as the remainder of the tract, and as to the value and character of the improvements thereon, so that the jury may have before them all of the facts upon which the witnesses based their opinion as to the market value of the whole tract.

4. Eminent Domain—Evidence as to Value of Property.—In arriving at the value of the property and the damage to the owner, it is admissible to show its condition, surroundings, improvements and capabilities, and if it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown.

5. Eminent Domain—Damages to Which Land Owner is Entitled.— The damage to which the owner of land is entitled includes all direct damage done to permanent improvements of every kind and character as well as all direct damage done to the property not improved.

6. Courts—Place at Which Cases Should Be Tried in Circuit Courts of Kenton County—Trial of Appeals to Circuit Court.—Under section 980 of the Kentucky Statutes all cases in the circuit court of Kenton County are to be tried in the city of Covington except where the defendants reside nearer to Independence than they do to Covington, and this practice applies to appeals brought to

the circuit as well as to cases originally filed in the circuit court.

BENJAMIN D. WARFIELD and S. D. ROUSE for appellant.

MYERS & HOWARD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this condemnation proceeding instituted by the appellant railroad company against the appellee corporation, the jury in the circuit court assessed the damages at $15,333. From the judgment on this verdict this appeal is prosecuted.

Commissioners appointed to value the property desired to be taken by the railroad company and assess the damages fixed the amount at $7,144.65. Both parties filed exceptions to the report of the commissioners, and on a trial before a jury in the county court there was a verdict and judgment fixing the damages at $6,500. From this judgment both parties appealed to the circuit court. The circuit court in Kenton County holds terms in Covington, a city of the second class, and also at Independence, the county seat of Kenton County. The railroad company prosecuted its appeal to the Independence court while the appellee prosecuted its appeal to the Covington court. It seems that the appeal filed in the Covington Circuit Court came up for trial first, and when the case was called the railroad company objected to its being tried in Covington and moved that it be transferred for trial to Independence. This motion was overruled and the case tried at Covington. On this appeal the first question raised by counsel for the railroad company is that the trial court erred in refusing to transfer the case for trial to Independence.

The place at which cases shall be docketed and set for trial in Kenton County is regulated by section 980 of the Kentucky Statutes, providing in part that * * * "the circuit courts shall be in continuous session, and shall be held in cities of the second class, where there are or may be such cities, but the judge of such courts shall hold part of such sessions at the county seat of the county where the same is not such city, such part to be not less than two weeks, if the business of the court require so long. * * * And all suits in which the defendants, or the greater number of defendants, reside nearer to said county seat than to said city of the second

class, shall be docketed and tried at said county seat, and the process in such cases shall so indicate.''

Under this statute it will be observed that all cases are to be tried at the court held in the city of the second class—in this case Covington—except suits in which the defendants, or the greater number of them, reside nearer to the county seat than to the city of the second class. In this case the appellee, the defendant below, was a corporation and had its office and principal place of business in the city of Covington and so should be treated as residing in that city. Therefore, it was proper that the appeal should be docketed and tried in Covington. We do not think the fact that this was an appeal and not an original suit affects the question of where it should be tried. The statute refers to trials in the circuit court, and whenever a case is pending for trial in the circuit court, whether it be brought originally in the circuit court or comes to the circuit court by appeal from some inferior court, the procedure is the same. We think the court properly ordered a trial of the case to be had in the Covington court.

Before taking up the other grounds of reversal a general description of the condition and situation of the entire tract of land a part of which was sought to be condemned by the railroad company will be helpful in understanding the questions raised on this appeal. In 1905 a number of gentlemen residing in Covington purchased a long narrow tract of land containing about 127 acres, situated some eighteen miles south of Covington and bounded on one side by existing lines of the appellant company, and on the other side by the Licking River. They paid for the land $11,000, and their purpose in buying it was to convert it into a country summer resort for themselves and others who might become members of a corporation which they formed under the name and style of the White Villa Club. Soon after the purchase of the property, landscape and other engineers were employed and the grounds were surveyed and laid out into roads, walks, plats and sidewalks. Trees and shrubbery were planted at appropriate places. Lakes for bathing, boating and fishing purposes were established, and a number of handsome homes were erected by members of the club. In fact everything that intelligence, taste and wealth could accomplish was being done towards making this naturally attractive property a delightful residential place. As a result of these ef-

forts of the members of the club, the place greatly increased in value and the weight of the evidence shows that when these condemnation proceedings were instituted its reasonable market value was between $75,000 and $100,000.

The railroad company desired to condemn a strip of land, parallel with its existing line, for the purpose of double-tracking its road. The strip of land it wished to condemn varied in width from 30 to 80 feet and extended through this property for a distance of something over 5,000 feet. The amount of damage the taking of the strip of land did to the whole tract, including the value of the land taken, was estimated at widely varying figures, to which attention will be called later, although we may here add that a number of witnesses placed the damage at a much larger sum than the jury allowed.

On the trial of the case the railroad company introduced the deputy sheriff of Kenton County and asked him "on what date the assessments were made of property in Kenton County contained in the current tax books for the year 1912." To this question the defendant appellee objected. The court sustained the objection, and it was then avowed that the witness, if permitted to answer, would say "that he is deputy sheriff, and as such has in his possession the tax books for the year 1912 which contain the assessments made as of the first of September, 1911, and that the 127 acres of the White Villa Club is assessed and stands on the tax books for taxation for county and State purposes at $10,000."

It is now complained that the court committed error in refusing to permit this evidence to go to the jury. We think it would be competent to show by the officer of the White Villa Club who listed this property for assessment in 1911 the price at which he gave it in for assessment, or if his testimony could not be procured, it would be competent to show by the assessing officer the value at which it was given in for assessment by the person who assessed it in that year, assuming of course that he was authorized to list the property. This evidence is not of course controlling as to the value of the property, but the value at which property is listed for taxation by the owner is a relevant circumstance that the jury may consider as substantive evidence in arriving at the market value of property when there is an issue made as to its value, and there is a difference between the value fixed by the owner in his evidence and the

value fixed by him when he listed the property for taxation. Birmingham R. Co. v. Smith, 89 Ala., 305; Manning v. Lowell, 173 Mass., 100. Generally speaking, it is well understood by juries and everybody else that the amount at which property is assessed throws little light on its actual value, and so the assessed value of property would have small weight with a jury in the ascertainment of its real value; but nevertheless we think it would be admissible to show this fact by persons who were competent to speak concerning it. It is very clear, however, that the offered evidence was properly rejected, as the deputy sheriff did not know who assessed the property or what statement the assessing party made when it was assessed or whether it was assessed by a person authorized to act for the company. Looking at it, however, from any standpoint, the rejection of this evidence was not very material.

The next complaint is that a number of witnesses who testified for the appellee were permitted to express their opinion as to the value of the property as a whole, and also their opinion as to the value of the different improvements on the property such as buildings, lakes, drives and the like. The witnesses who were asked as to the value of the property as a whole and as to the value of the various improvements were qualified to express an opinion on the matters they were asked about, and it is conceded that it was competent to show by them the value of the property as a whole but denied that it was admissible to ask them about the condition, character and value of particular improvements on the property.

It is conceded that the measure of damages to which the appellee was entitled was correctly stated in the instruction given by the court to be such sum as the jury may believe from the evidence was the fair and reasonable market value of the land taken, considering it in relation to the entire tract, including any additional fencing which was thereby made necessary and considering it for all purposes for which the jury might believe from the evidence it was adapted, and also such sums as would compensate the owner for such other direct damage, if any, that resulted to the remainder of the tract by reason of the situation or condition in which it was placed by the taking of the part taken. They were further told "that the amount of damage assessed shall not exceed in all the difference between the

actual market value of the entire tract immediately before and the actual market value of the remainder immediately after the taking," excluding from consideration in both instances any enhancement in the value of the land, if any, by reason of the construction of the additional railroad track.

This being the criterion of recovery, we think it was admissible to ask witnesses, who were being examined for the purpose of giving their opinion as to the market value of the property before and after the taking, with particularity as to the character, condition and surroundings of the property proposed to be taken and the value and character of the improvements thereon as well as the character, condition and surroundings of the remainder of the tract and the value and character of the improvements thereon so that the jury might have before them all the facts upon which the witnesses based their opinion as to the market value of the whole tract. The jury are entitled to have the witness tell them in detail how he arrived at his estimate of the value of the land proposed to be taken, as well as how he arrived at his estimate of the damage to the remainder of the tract, and the market value of the whole tract both before and after the taking, so that they may better be prepared to judge of the correctness of his estimates as to value and damage. In other words, the jury are entitled to have all the information in the possession of the witness that will explain or support his estimates. For example in ths case the value of this property without the improvements made on it by the club and its members was trifling as compared with its value after these improvements had been made, and if the taking of the land proposed to be taken damaged the remainder of the tract, including all or a part of the improvements thereon, the club was entitled to such damages as would compensate it for the loss it sustained by the taking and the damage to the remainder of the tract, considering the condition of the entire tract and all of the improvements thereon at the time of the taking, and it was proper to permit the witnesses to describe the character and value of the improvements for the enlightment of the jury.

The land owner whose property is sought to be taken for public purposes is entitled to have, as the jury were told in the instructions, such a sum as will compensate him for the property actually taken and such direct

damage as results to the remainder of his property by reason of the taking, and this includes direct damage done to permanent improvements of every kind and character as well as direct damage done to the property not improved.

In Lewis on Eminent Domain, Vol. 2, Secs. 706, 707, the rule is laid down, supported by abundant authority, that "in estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. * * * All of the facts as to the condition of the property and its surroundings, its improvements and capabilities, may be shown and considered in estimating its value. * * * The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation."

In Chicago, St. Louis & New Orleans R. R. Co. v. Rottgering, 26 Ky. L. R., 1167, in considering the admissibility of evidence of value, the court said:

"It is complained by counsel for appellant that the trial court erred in admitting testimony to the effect that appellees' land fronting on the gravel road was, before the running of appellant's railroad through it, suitable for building lots, and also to prove the price at which other adjoining and contiguous lands sold about the time appellees' was taken.

"As it appears from the evidence that appellees' land was only about a quarter of a mile distant from the corporate limits of the thriving city of Paducah, and that town lots adjoining had been laid off and were in the market for building purposes, we think it was competent to prove the availability and adaptability of their lands for such use as well as for gardening or farming purposes." To the same effect are West Virginia R. R. Co. v. Gibson, 15 Ky. L. R., 7, and Madisonville R. R. Co. v. Ross, 126 Ky., 138.

It appears in this case that the damage which the club sustained by the loss of the property actually taken was small compared with the damage it sustained

caused by the taking to the remainder of the tract. Evidently the jury in assessing the damages at so large a sum were influenced no little by the evidence as to the amount of direct damage that was done to the remainder of the tract and the improvements thereon by the taking. To illustrate, hundreds of trees that added much to the beauty of the grounds and the value of the property were destroyed. Walks, drives and lakes that had been made at large expense and that enhanced the market value of the property, were injured. Excavations were made and steep and unsightly banks were left that impaired the market value of the property for the purposes for which it was being used and to which it was adapted, and in many other ways pointed out by the witnesses the remainder of the tract was damaged by the taking. This damage was not speculative or uncertain. It was existing and substantial. The taking of this strip of land not only impaired the present value of the remainder of the tract but diminished its value for the uses to which it was adapted and for which it was intended.

It is true the assessment made by the jury was large, and yet there was abundant evidence to support the finding. Of course there was wide difference of opinion between the estimates as to the damage made by the witnesses for the railroad company and by the witnesses for the club, but in all cases of this character there is room for much latitude of opinion, and the jury was as well, if not better, qualified than we are to reconcile differences of opinion as to value and arrive at a reasonable and fair conclusion.

In addition to the evidence of the witnesses, the jury had the benefit of seeing for themselves the property, and they had the right to and doubtless did form opinions of their own independent of what the witnesses said as to the amount of damage the club has sustained. At any rate, under all the facts shown in the record, the verdict is not so excessive as to warrant us in saying that it was the result of passion or prejudice.

Upon the whole case we have reached the conclusion that the judgment should be affirmed and it is so ordered.