## Miller et al. v. King et al.
May 2, 1939.

LAWRENCE S. GRAUMAN and ROBERT L. SLOSS for appellants.

MARSHALL B. HARDY and RALPH H. LOGAN for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellants, Paul Miller and M. F. Dawson, are appealing from a judgment rendered on a jury verdict awarding appellees, William A. King and Ruby King, the sum of $75 as the value of a strip of land containing one-half acre and $300 as direct damages to the remaining 21 acres owned by the appellees. In urging reversal appellants insist that (1) the trial court erred in overruling appellants' motion to dismiss the appeal from the county court; (2) error was committed in permitting William King and his witnesses to testify that the one-half acre of land taken deprived him of the only home site on the land; (3) incompetent testimony was admitted; and (4) the direct damages awarded are excessive and appear to have resulted from passion and prejudice on the part of the jury, and the verdict as to direct damages is palpably and flagrantly against the weight of the evidence.

Appellants filed a petition in the Jefferson county court on May 13, 1937, seeking to have altered a county road known as the Medora road, so as to widen and improve it and have a new bridge erected over Pond Creek. Sections 4301, 4302, and 4302a-1, Kentucky Statutes. Viewers were appointed on that date, and on May 17th they filed their report concerning the proposed change in the road. On May 22nd, a summons was issued directing that John Headricks and Lillian Headricks and William A. King and Ruby King, owners of the property affected by the proposed change in the Medora road, appear before the judge of the Jefferson county

court on May 27th and show cause why the proposed change should not be made. This summons was served on the parties on May 24th. They appeared before the county judge and a settlement was made with John Headricks and Lillian Headricks concerning the property owned by them. The appellees herein refused to accept the compensation recommended by the viewers.

On May 27th, judgment was entered in the county court granting the right of way, and commissioners were appointed to fix the value of the land owned by the appellees, which was to be taken for right of way purposes. On June 5th, the commissioners filed a report in which they recommended that $25 be allowed as the value of the one-half acre of land to be taken, $20 for the moving of the fence and $50 as direct damages to the remaining property.

On June 5th a summons was issued directing that appellees appear before the county judge on June 10th to answer and to show cause why the commissioners' report should not be confirmed. This summons was served on the appellees on June 7th, but they did not appear as directed. On June 12th an order was entered confirming the commissioners' report, condemning the one-half acre of land belonging to appellees for right of way purposes and awarding them the compensation recommended by the commissioners. The order also set out that upon payment into court of the $95, the county could take possession of the tract of land and proceed to use the same as a right of way for relocating the Medora road. The order set out further that a special commissioner was appointed and directed to execute a deed to Jefferson county for and on behalf of appellees, conveying all their right and title in the one-half acre of land. On July 9th, an order was entered wherein it was recited that the sum of $95 had been paid into the Jefferson county court, and that the special commissioner had executed the deed to the one-half acre of land taken for right of way purposes for and on behalf of William A. King and Ruby King. This order approved and confirmed the deed executed by the special commissioner.

On July 20th, the appellees filed a motion in the county court seeking (1) to have set aside the judgment entered on July 9th; (2) to have set aside the order confirming the commissioners' report filed June 5th; (3) to be permitted to file their exceptions to the commission-

ers' report of June 5th; and (4) to have the action docketed and a jury impaneled to assess the damages due for the land taken for right of way purposes and to have determined the value of the land so taken. On the same day appellees tendered their exceptions to the commissioners' report, along with an affidavit in support thereof. The record shows that the exceptions were tendered in court on July 20, 1937, and that the motion to file same was overruled.

On August 5th, the appellees filed a statement of appeal in the Jefferson circuit court. This statement set forth that the appellees were appealing from the judgment of the Jefferson county court rendered on July 9, 1937, and from all orders entered by the county judge in the action. A copy of all the proceedings in the Jefferson county court was filed with the appeal. Appellants' motion to dismiss the appeal for the reason that no exceptions were filed in the county court was overruled. Appellants tendered exceptions to the report of the commissioners filed in the Jefferson county court on June 5th. The appellees objected to the filing of these exceptions. This objection was overruled and the exceptions were ordered filed and made a part of the record.

The appellees insist that they were entitled to 20 days' notice of the hearing set by the county court for June 10th, at which time the report of the commissioners filed on June 5th was to be considered. An examination of Section 4302 of the Statutes does not reveal that a notice is required in such instances. The appellees appeared at the hearing set for May 27th, after being summoned therefor. Section 4301 of the Statutes. The appeal to the circuit court was duly perfected in accordance with Section 4302a-1. While the trial court entered no order relative to making the exceptions tendered by appellees in the county court on July 20th a part of the record, we have noted that the trial court overruled appellants' motion to dismiss the appeal for the reason that the exceptions had not been filed in the county court. The effect of this ruling, especially when considered in the light of the subsequent proceedings in the circuit court, was such as to warrant the treating of the exceptions tendered in the county court on July 20th by the appellees as a part of the record. In any event the appellees, having prosecuted their appeal to the circuit court, were entitled to have the amount of

damages due them determined by a **jury under Section** 242 of the Constitution.

Appellants' second and third grounds for reversal are directed toward the line of testimony relating generally to the peculiar adaptability of the one-half acre of land for a home site. As stated by counsel for appellants in their brief, they objected to the testimony relating to the value of the land taken for a "home site, the testimony with reference to the use to which the appellees intended to put the property, and also the testimony with reference to what it would cost to fill a part of the remainder so as to make available a home site." William King testified first for the appellees. He sought to show that the one-half acre of land taken included most of the high ground fronting on the road, and that this high ground was more suitable for building purposes than the remainder of his 21½ acre tract. According to his testimony, and other testimony in the record, the remainder of the high ground fronting on the road was not adequate for a desirable site for building a home, and necessary farm buildings. The following quotation from the record sets forth generally King's testimony on this point, the objections of counsel for appellants thereto, and also the instructions given the jury by the court on the question:

"33. Before the road was taken, I will ask you whether or not you had plenty of room on the high ground before this drop-off occurred in your land, to build your house and your barn? A. I did. I had that figured out.

"By the Court: Have you got it now? A. No sir.

"By Mr. Grauman: That is not competent to show what he intended, and we object, and we move the court to instruct the jury what he planned or intended to do is not competent in this case.

"By the Court: Ladies and gentlemen of the jury, the Court instructs you as a matter of law that what the defendant contemplated doing with his land is not competent for you to consider. It is competent to establish that that roadway there affected the remainder of the land after the half acre was taken from it and to what extent. You all understand that, don't you?

"By a Juror: Yes sir.

"34. I will ask you whether or not there has been left to you sufficient land on this county road, anywhere except the strip right along the railroad track, to build your house and barn, without being required to do a lot of filling? A. It has not.

"The last question objected to by counsel for the plaintiffs, and objection overruled, to which the plaintiffs, by counsel excepted."

The record shows repeated attempts on the part of counsel for appellees to get this line of testimony before the jury. Counsel for the appellants made numerous objections to this testimony, some of which were sustained and some overruled. While appellees are not complaining of the judgment, they insist that the trial court erred in failing to permit them to introduce testimony as to the sale price of similar land in the same neighborhood. In view of the facts and circumstances peculiar to the case at bar, we think that there is basis for the appellees' contention, in view of our rulings on similar points in the cases of Cranley v. Boyd County, 266 Ky. 569, 99 S. W. (2d) 737, and Commonwealth v. Begley, 272 Ky. 289, 114 S. W. (2d) 127. But, obviously, it is not necessary to discuss further this point.

Both the appellants and the appellees cite and rely upon the case of Louisville & Nashville Railroad Company v. Cornelius, 232 Ky. 282, 22 S. W. (2d) 1033. Both quote the following part of the opinion therein:

"While it is true, as appellant argues, that it is not competent for the owner to show in cases like this to what use he intends to put the property nor what plans he has for its improvement, nor the probable future use of the property (see Lewis on Eminent Domain [3d Ed.] § 709), yet it is equally true that the adaptability of the property for certain uses may be shown if it adds to the value of the property. David v. L. & I. Railroad Company, 158 Ky. 721, 166 S. W. 230; Louisville & Nashville Railroad Company v. White Villa Club, 155 Ky. 452, 159 S. W. 983; West Virginia, P. & T. Railroad Company v. Gibson, 94 Ky. 234, 21 S. W. 1055, 15 Ky. Law Rep. 7. Cf. Producers' Wood Preserving Company v. Commissioners of Sewerage of Louisville, 227 Ky. 159, 12 S. W. (2d) 292, wherein the case of Weiss v. Commissioners of Sewerage of Louisville, 152 Ky. 552, 153 S. W. 967, relied upon by appellant,

is explained and differentiated. In Lewis on Eminent Domain (3d Ed.) § 707, the discussion on this question of 'Value for Particular Uses' is closed thus: 'The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But, when all the facts and circumstances have been shown, the question at last is, what is it worth in the market?' "

In view of the circumstances pertaining to the King property, and also the instructions given the jury while the witness King was testifying, we have reached the conclusion that the substantial rights of appellants were not prejudiced by the testimony relating to the peculiar adaptability for building purposes of the one-half acre of land taken. We think that it was competent for the appellees to attempt to show that when this particular piece of land was taken there did not remain a desirable building site on the high ground fronting on the road. It is also significant that the Kings did build a house near the road. While this shows that all of the high ground fronting on the road was not taken, it shows also that King was not seeking damages to the remainder of his property for an uncontemplated purpose or use. It would have been error to have restricted the testimony solely to the value of the land for farming purposes. This conclusion is not inconsistent with the rule discussed in Louisville & Nashville Railroad Company v. Cornelius, supra.

Counsel for appellants earnestly insist that the direct damages awarded are excessive, and that the verdict as to such damages is palpably and flagrantly against the evidence. While there is conflict in the evidence as to the amount of the direct damages to the land, we can not agree with this contention of the appellants. An examination of the testimony on this point shows that the estimated amount of direct damages to the land ranged from nothing to several hundred dol-

158

lars. The jury fixed the damages at $300. In view of all the circumstances in the case, and our conclusion that it was admissible for the appellees to show the peculiar adaptability of the land taken for building purposes, in connection with the remaining 21 acres, we are not prepared to say that the damages were excessive, or that the verdict was palpably and flagrantly against the weight of the evidence. We can not refrain from saying, however, that we fully appreciate and commend the position of counsel for appellants in attempting to hold the damages in cases such as this one to a minimum in order that the county's funds be not dissipated.

Finding no error prejudicial to appellants' substantial rights, we are constrained to conclude that the judgment of the lower court should be and it is affirmed.