COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Paul STAMPER et al., Appellees.

Court of Appeals of Kentucky.

March 10, 1961.

Jo M. Ferguson, Atty. Gen., F. D. Curry, Chief Asst. Atty. Gen., James J. Shannon, Jr., Dept. of Highways, Frankfort, for appellant.

Carlos B. Pope, Barbourville, James S. Golden and Julian H. Golden, Pineville, for appellees.

CULLEN, Commissioner.

Upon trial of this condemnation suit in the circuit court, following an appeal from the county court, the jury returned a verdict awarding $24,000 for the land taken and $1,000 as damages to the remaining tract. Judgment was entered accordingly. The Commonwealth, Department of Highways, has appealed, contending that the verdict is not supported by sufficient evidence, the amount awarded is excessive, and there were errors in the admission of evidence.

The appellees Paul Stamper and wife owned a tract of 45 acres situated on a state highway at a point about a quarter of a mile from Barbourville. The tract had a frontage of 1144 feet on the highway. On the front portion of the tract were a dwelling house, with septic tank and lines, two wells furnishing water to the house, and an unused store building. There also had been at one time a pond on this portion. For the purpose of widening the highway the state condemned a strip around 100 feet in depth along the entire front of the tract, amounting to 3.24 acres. On this strip were all the improvements above mentioned, so they were taken by the condemnation.

For convenience we shall first consider the alleged errors in the admission of evidence.

The landowner in his testimony undertook to ascribe a market value of $1,250 to the pond. While for reasons hereinafter stated this testimony was incompetent, the only basis of objection stated by the attorney for the Commonwealth was that the pond did not exist and therefore was not being taken. Subsequently two other witnesses for the landowner were permitted, without objection, to place a value on the pond. Another witness for the landowner was instructed by the landowner's attorney *not* to include any allowance for the pond in his estimates of damage. Still another witness did not mention the pond. The whole question about the pond thus was in a state of confusion. If the attorney for the Commonwealth was interested only in the fact that there was no pond, he could

have established that fact by suitable evidence; furthermore, the jurors viewed the premises and could determine for themselves whether there was a pond. On the other hand, if the attorney sought to exclude any testimony putting a value on the pond because such testimony was incompetent, we think it was incumbent upon him to seek a clear-cut ruling from the court, particularly at the time the landowner's attorney indicated to one of his witnesses that the pond should not be given a value. It is possible that the jury was confused as to whether or not to give any consideration to the testimony of the witnesses who did put a specific value on the pond, but. the attorney for the Commonwealth made no effort to clear up the confusion and we think it is too late to raise the alleged error on appeal.

■ One of the witnesses for the landowner was asked on cross-examination whether he could give an example of a sale of similar property. He said, "Oh, I would say there was Mr. Evans, which was something similar to that." It appears that the Evans' property had been taken by condemnation and that some of the jurors in the instant case had sat on the jury in the Evans case. The court promptly admonished the jury not to consider the reference to the Evans' property for any purpose whatever, and later all of the testimony of this witness was stricken and the jury admonished not to consider it. We do not consider the bare reference to the Evans' property as being so prejudicial that it could not be cured by the admonition.

■ One of the Commonwealth's witnesses was asked on cross-examination to state the most recent sale of similar property with which he was acquainted. Over objections he answered, "I know a piece of property that sold along the highway there. I know it sold for $5,000." If this testimony be considered incompetent it could not have been prejudicial to the Commonwealth, because it tended only to support the *low* estimate of damages given by this witness.

■ We shall consider together the two contentions that the evidence is insufficient to support the verdict and the damages are excessive. The simple answer to these contentions is that there was testimony by qualified witnesses placing a value of more than $24,000 on the property taken and estimating the damages to the remainder at more than $1,000. These witnesses stated in detail the bases for their estimates of the value of the property taken and the facts they took into consideration. It is true, as shall hereinafter be discussed, that these witnesses improperly were permitted to place separate "market" values on each of the improvements in reaching their estimates of total value, and thus were permitted to use an improper measure of damages, but the Commonwealth made no objection to this and therefore is in the position of having consented to it. It is true also that most of the witnesses gave no specific bases for their estimates of the damages to the remaining tract, but there was evidence there would be a fill some 12 to 14 feet in height constructed across part of the frontage with a ditch between it and the remaining tract, and we think this was sufficient to support the allowance of $1,000 as damages to the remainder.

We are affirming the judgment despite the error with respect to placing separate values on the improvements, because the error was not raised upon the trial (we do not consider this to be a palpable error resulting in manifest injustice so as to justify invoking CR 61.02). Nevertheless, we consider it desirable to make some extended comments on the question of what consideration is to be given to improvements in determining the value of property taken by condemnation, because it seems that some confusion exists concerning this question.

■ The basic measure of damages, where part of a tract of land is taken by condemnation, is the difference in the fair market value of the tract before and after

the taking. City of Newport Municipal Housing Commission v. Turner Advertising Inc., Ky., 334 S.W.2d 767; Commonwealth v. Gilbert, Ky., 253 S.W.2d 264, 39 A.L.R. 2d 205; Kentucky Water Service Co. v. Bird, Ky., 239 S.W.2d 66; Adams v. Commonwealth, 285 Ky. 38, 146 S.W.2d 7; Commonwealth v. Combs, 244 Ky. 204, 50 S.W.2d 497. Improvements should be considered only to the extent that they enhance the value of the land to which they are affixed. Louisville & N. R. Co. v. Asher, 10 Ky.Law Rep. 1021; Orgel on Valuation Under Eminent Domain, Vol. II, p. 5; Nichols on Eminent Domain, Vol. IV, sec. 13.11, pp. 207, 208; 29 C.J.S. Eminent Domain § 175, p. 1044. For this purpose it is proper for the witnesses to testify as to the character and condition of the improvements. Louisville & N. R. Co. v. White Villa Club, 155 Ky. 452, 159 S.W. 983.

■ In attempting to arrive at a fair estimate of the market value of the land with the improvements upon it there may be circumstances in which evidence as to the *cost* (less depreciation) of improvements may be received. For example, if it is shown that a particular improvement is well adapted to the location and tends to adapt the property to the use to which it could most advantageously be put, and there is nothing to show that the cost of the improvement was not paid in good faith and under normal conditions, the cost of the improvement, less depreciation, may be considered as proper evidence of the amount by which the improvement enhances the market value of the property. Nichols on Eminent Domain, Vol. IV, secs. 12.313, 13.-11, pp. 87 to 89, 208 to 210. Thus in the case of a dwelling house which conforms to improvement standards of the particular locality evidence of cost (less depreciation) should be admissible.

A different situation is presented in the case of overdevelopment or imprudent investment. If an owner builds an expensive house on land in a slum area the cost of the house is not a fair test of the amount by which the house enhances the market value of the property, because as a practical matter the property will not be marketable for a sum commensurate with the cost of the house. Likewise, if an owner constructs an improvement that is attractive to him, but does not appeal to ordinary buyers, it cannot be considered to have enhanced the value of the property to the extent of the cost of the improvement.

The same will be true in the case of obsolescence. An old mansion standing in a neighborhood that once was a district of fine residences but since has become commercial or industrial in character cannot be considered to enhance the value of the land on which it stands in accordance with its structural cost.

■ Another type of case in which evidence of cost of an improvement may be admissible is where an improvement is of a special character having no value except in connection with the particular business or uses of the owner—a type of improvement for which there is no market. Examples of this would be a toll road, Richmond & L. Turnpike Road Co. v. Madison County Fiscal Court, 114 Ky. 351, 70 S.W. 1044; a railroad terminal, Southern Railway Company v. City of Memphis, 126 Tenn. 267, 148 S.W. 662, 41 L.R.A.,N.S., 828; or perhaps an electric power company's substation.

■ In speaking of "improvements" in this discussion we mean major structures and not such things as shade trees, wells, septic tanks or small outbuildings that are merely incidental to the use of a major structure. Evidence as to the cost of such items is not admissible as bearing on the value of the land taken. Adams v. Commonwealth ex rel. State Highway Commission, 285 Ky. 38, 146 S.W.2d 7; Commonwealth v. Combs, 244 Ky. 204, 50 S.W.2d 497; Annotation, 1 A.L.R.2d 878. In the ordinary situation these things furnish comforts or conveniences of such a common nature that they are inherent elements of the value of the land and the major struc-

ture upon it. It must be kept in mind that we are talking about the value of the land taken; it may be that where an improvement on the land taken is an appurtenance to a structure on the remainder of the tract its cost may be shown as an element of the resulting damages to the remainder. See Commonwealth v. Conatser, Ky., 329 S.W. 2d 48.

It is important to make clear that while we are recognizing the admissibility of evidence as to the structural cost (less depreciation) of improvements in various circumstances, this does not mean that testimony may be admitted as to the *market value* of improvements. Ordinarily improvements are not marketable separate from the land to which they are affixed, so any attempted estimate of market value would not have a sufficient basis in experience to be of probative value.

It should be emphasized again that the *measure* of damages is the difference in the market value of the tract of land before and after the taking. While evidence as to structural cost of certain improvements may be admissible as bearing on the market value of the land, the *instructions* should make clear that the measure of damages is as above stated.

Applying the foregoing principles to the instant case, we conclude that evidence as to the structural cost (less depreciation) of the dwelling would have been admissible since it appears that the dwelling was well adapted to the location. Evidence as to the cost of the wells, septic tank and store building would not have been admissible because they were merely incidental appurtenances to the dwelling. The evidence that was given, as to the purported *market value* of the house, wells, septic tank and store building, was not proper because these improvements were not truly marketable separate from the land. However, since no objection was made to the evidence the Commonwealth cannot claim error on appeal.

The judgment is affirmed.