**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**CARDINAL HILL NURSERY, INC., et al., Appellees.**

Court of Appeals of Kentucky.

March 20, 1964.

As Modified on Rehearing June 26, 1964.

John B. Breckinridge, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, C. Dant Kearns, Lyndon, for appellant.

R. Vincent Goodlett, Rudy Yessin, Frankfort, for appellees.

DAVIS, Commissioner.

The Department of Highways appeals from a judgment entered by the Franklin Circuit Court, based upon a jury verdict awarding appellee $40,048.00 in a Chapter 177 (KRS 177.081–177.089) highway condemnation proceeding. An earlier procedural dispute in the same case was resolved in Commonwealth of Kentucky. Department of Highways v. Cardinal Hill Nursery, Incorporated, Ky., 343 S.W.2d 842.

After our decision just cited, the case was tried to a jury in the Franklin Circuit Court. That trial resulted in a verdict of $20,000.00 for the landowners. However, upon motion of the landowners, the trial court set aside the verdict and granted a new trial. It was upon the second jury trial that the verdict of $40,048.00 was awarded. From judgment entered upon the second verdict the Department appeals urging (1) that the first verdict be restored, or (2) alternatively, that the second verdict and consequent judgment be reversed for a third trial. The numerous contentions of the parties will be discussed in the course of the opinion.

The Department is acquiring a strip of land containing 33.81 acres from a tract originally consisting of 209.13 acres. The acquisition is incident to construction of a nonaccess interstate highway, designated as I-64. The tract from which the right of way is taken lies in Franklin County on the

east side of the Kentucky River, approximately 2½ air miles southeast of Frankfort; it is contiguous to and served by Glenns Creek Pike, the L. & N. Railroad, and the river. The right of way tract of 33.81 acres is carved from the original tract in such manner as to leave two severed tracts, one tract of 111.42 acres remaining on the north side of the condemned area and another tract of 63.82 acres remaining on the south side of the condemned area.

The date of the taking by the Department was December 18, 1959. By a written contract dated April 2, 1958, the then fee simple owner of the entire tract, Cardinal Hill Nursery, Inc., entered upon a lease agreement with Derby Construction Company.[1] By the terms of the lease Derby was granted all of Cardinal's interest in and to the limestone in and under the surface of the entire tract. The lease accorded Derby complete mineral rights to the limestone, including rights to enter upon the premises to search for, explore, mine, quarry and remove limestone from the premises. Derby was granted the privilege to sink shafts and to deposit the waste minerals from such shafts on the land surface.

The lease provided an original term of five years; rental was based upon a royalty of 4¢ per ton for limestone quarried, mined and removed from the premises during the initial five-year term. Derby was extended the option to renew the lease in successive five-year terms, so that the ultimate term of the lease could be extended to fifty years. The per ton royalty rate was set at 5¢ per ton for any extensions of the lease beyond the original five-year term. Certain minimum guaranteed rentals were prescribed, and a per acre payment for surface areas appropriated by Derby in quarrying was included in the contract. Cardinal expressly reserved to itself all rights to minerals or other substances except limestone.

1. For convenience, Cardinal Hill Nursery, Inc., will be referred to as "Cardinal"; Derby Construction Company as "Derby," and the Department of Highways as "Department."

Derby was permitted to construct a service road on the premises from the site of the proposed quarry to a public road known as Hanley Lane. Permission was also given for the construction of service roads from the quarry site to the Glenns Creek Pike and to the Kentucky River. The lease contract specifically recognized that a doubt existed whether Cardinal's property extended to Hanley Lane, and it was agreed that Cardinal would acquire and make available to Derby a reasonable right of way from Cardinal's property to connect with Hanley Lane.

The lease contained a provision referred to by the parties as a "condemnation clause." By its terms, Cardinal and Derby recognized that an interstate limited access highway might be located on or across a portion of the leased property. Derby expressly relinquished to Cardinal any right to participate in any compensation or damages which might stem from the contemplated highway construction, with one exception. Derby retained the right to recover damages to Derby's contemplated service road to reach Hanley Lane.

On February 2, 1960, Cardinal and Derby amended the "condemnation clause" of the lease. The substance of the amendment was that Derby did not waive its rights in condemnation proceeds for (1) damages for the taking or closing of Derby's service road to Hanley Lane, (2) damage to any of its improvements placed on the leased premises, and (3) any damage or loss which Derby might sustain by reason of its inability to quarry and remove stone from right of way taken, or its inability to have reasonable access to stone in land not taken but made inaccessible by reason of the taking. A part of the consideration for this amended agreement was Derby's release of any claim it may have had against Cardinal for Cardinal's failure to obtain, or delay in obtaining, the required right of way for access to Hanley Lane.

On January 1, 1961, before the date of the first jury trial, Cardinal and Derby (acting through The Franklin County Stone Company, a division of Derby) entered into a contract of sale of the entire tract to Derby. A deed from Cardinal to Derby's subsidiary was executed and delivered, bearing date January 1, 1961. In this transaction Derby bought from Cardinal the fee simple title to the entire tract, together with all rights in the ultimate recovery to be had in the condemnation proceedings in the case at bar. The purchase price agreed upon was $90,000.00.

Before the first trial the Department was permitted to amend its complaint to incorporate the provision that the landowners shall have the right to quarry by tunneling under the surface of the 33.81 acres of right of way at an elevation not to exceed 480 feet above sea level, to be performed so as to provide adequate subjacent support to the right of way.

At the first jury trial the lease, amended lease, sales contract and deed were admitted in evidence.[2] The Department introduced appraisal witnesses who gave testimony indicating the entire tract had a before-value ranging between $83,456.00 and $90,000.00; these witnesses placed an after-value between $70,732.00 and $76,475.00. Their estimates of difference in the before and after values ranged from $12,624.00 to $13,525.00.

The landowners adduced appraisal witnesses who placed before-values ranging from $234,700.00 to $260,000.00 and after-value at $90,000.00.

The first trial was in November, 1961, and before our decision in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844. The jury's verdict on the first trial awarded $6,000.00 for the 33.81 acres taken and $14,000.00 as damages resulting to the remaining lands, for an aggregate verdict of $20,000.00. The landowners based the motion for new trial on

2. However, during the course of the trial the court admonished the jury not to consider the agreed sales price of the land from Cardinal to Derby.

the premise that the verdict was inadequate and not supported by the evidence. The trial court was of the same view. We agree that the verdict was improper, but not that it was inadequate.

■ It is true that the verdict of $20,-000 was within the range of the outside limits of before and after market values. However, no witness on either side placed a value as low as $6,000.00 on the 33.81 acres taken. The case is governed by Pierson v. Commonwealth, Ky., 350 S.W.2d 487, since the amount of the item allowed for land taken is demonstrably erroneous. Here, as there, this unfounded item can receive no succor from the fact that the overall verdict falls within the scope of testimony. Since we conclude that the trial court correctly granted Derby's motion for new trial after the first verdict on the ground just stated, we do not reach the other alleged errors urged by Derby as additional bases to support the granting of the new trial. What we have said is not an adjudication that $20,000 is inadequate; merely that it was not properly reached on the evidence at the first trial.

In some of our cases, in treating the particular circumstances involved, language relating to the admissibility of evidence fixing individual "price tags" on factors may have misleading effect on bench and bar. See Commonwealth, Department of Highways v. Sherrod, supra; Commonwealth, Department of Highways v. Stamper, Ky., 345 S.W.2d 640; and Commonwealth, Department of Highways v. Tyree, Ky., 365 S.W.2d 472. In an effort to clarify our viewpoint in this area we delineate the present consensus of the majority of the court:

■ It is the opinion of the court that appraisal witnesses on direct examination may, after proper qualification as to competence, testify to the before and after market value of the property involved. Such witnesses, on direct examination, may relate any pertinent factors considered by them in arriving at the values to which they have testified; in so doing they may state their estimate of the amount by which a major structure enhances the "before" value of the land to which it is affixed, and in support of that estimate may testify as to the cost, original or reproduction, less depreciation, of the structure, upon the conditions and under the limitations set forth in Commonwealth, Dept. of Highways v. Stamper, Ky., 345 S.W.2d 640. However, upon direct examination it is not proper for appraisal witnesses to ascribe an itemized price tag to "damage" factors.

■ But on cross-examination it is appropriate to make inquiry of the witness as to whether he has indeed ascribed particular amounts to "damage" factors. This is not to show "after" market value; it is to test the probative value of the evidence in chief from the witness. Some factors are not compensable; they are classified as damnum absque injuria. Certainly it would be fallacious to foreclose the cross-examiner's right to elicit from the appraisal witness admissions that he has priced such factors in his "after" market value testimony.

Prior to the second trial, and after the first one, the trial court entered a pretrial order forbidding introduction of evidence of, or reference to, the lease and amended lease from Cardinal to Derby. The same pretrial order forbade evidence of the contract of sale and the subsequent deed from Cardinal to Derby's alter ego, Franklin County Stone Company. It will be recalled that the contract of sale and the deed made pursuant to it reflect a total consideration of $90,000.00 paid by Derby to Cardinal. Appellant urges this as reversible error.

■ Our cases reflect that we are firmly committed to the admission of evidence of comparable sales in condemnation proceedings if such sales are indeed "comparable" within the legal meaning of that term. Cf. Stewart v. Commonwealth, Ky., 337 S.W.2d 880, and Miller v. King, 278 Ky. 151, 128 S.W.2d 621. In Commonwealth v.

Fister, Ky., 373 S.W.2d 720, we observed that evidence of the price paid by a landowner is ordinarily competent. Cf. 5 Nichols, Eminent Domain, 3rd Ed., § 21.2.

Nevertheless, we consider that the transaction between Cardinal and Derby was not admissible under the particular circumstances of this case. It will be recalled that Derby had a long term lease on the premises, coupled with the limestone quarrying rights. Moreover, there was evidence of substantial monetary outlay by Derby looking toward preparing the property for its quarrying operation, to which evidence later reference will be made. The respective positions of Cardinal and Derby at the time of Cardinal's sale to Derby may not be equated with the usual willing buyer and seller, dealing at arm's length. Derby already had a substantial stake in the property; Cardinal had already divested itself of so much of its fee simple title that what it had left to sell could hardly be deemed reflective of full market value of the entire tract. We are not unmindful of the postulate that the value of the lease to the lessor and lessee might be deemed to be in equipoise, but under the factual situation before us we conclude that view untenable. What we have said is not to say that evidence of a sale by lessor to lessee could never be received as evidence of market value. But in this case we hold that the price paid by Derby to Cardinal was not reflective of market value for the reasons set forth.

The Department complains of testimony from Derby as to the depreciated cost of $200,000 to $250,000 for developing the site as a quarry. Evidence of cost, original or reproduction, less depreciation, of a major structure is proper if it conforms to the rules laid down in Commonwealth, Dept. of Highways v. Stamper, Ky., 345 S.W. 2d 640, and is properly related to enhancement of market value of the property as a whole. Upon another trial admission of evidence of cost will be governed by these rules.

The Department complains of the evidence by the appraisal witnesses for Derby. These witnesses were permitted to testify that they valued the limestone in place at $2,000 per acre, while placing the value of the surface for the 33.81 acres taken at approximately $200 per acre. Specific evaluation of the limestone separately was not proper. We said in Gulf Interstate Gas Co. v. Garvin, Ky., 368 S.W. 2d 309 (as we had said in the same litigation reported in 303 S.W.2d 260), that the quantity and quality of minerals underlying condemned land may be considered as affecting the market value of the land, but the minerals *cannot be valued separately*. The reasons supporting the rule are fully enunciated in the opinions just cited and need not be repeated. While a witness for the Department in the instant case gave an estimate of acreage values of some of the stone he did so in response to a question asked by the trial judge, so it cannot be said that the Department "opened the door" to such evidence by the landowners. For the error in the admission of the evidence separately valuing the stone in place the judgment must be reversed.

The Department complains of admission of evidence relating to periodic temporary flooding of the remaining land by reason of the drainage of surface water from the right of way. The basis of the complaint is that no effort was made to condemn the right to cast surface water on Derby's property; hence, it would be the proper subject of a separate action. We conclude that Derby's injection of the matter into this case will preclude its right to make the claim the subject of any subsequent action; therefore, it was proper to receive evidence of the claimed damage. Bowling Green-Warren County Airport Board v. Long, Ky., 364 S.W.2d 167.

Appellant complains that it was deprived of showing the true status of the Hanley Lane right of way as of the taking date. However, the pretrial order of March 16, 1962, expressly permitted full development

of the facts relating to that matter. The provisions of numerical paragraph 6 of the March 16, 1962, pretrial order should be followed in the event of another trial.

Appellant urges that the trial court should have dismissed the condemnation proceedings as to Derby and H. K. Gayle and Jennie H. Gayle. We do not agree. All of them were proper parties at the commencement of the action, and they were brought into the case by the appellant's complaint. The Gayles are shown to have a lien interest by the sale contract and deed from Cardinal to Derby's subsidiary. Ultimate title of the condemned land properly requires the presence of these parties in the case. No reason indicates that their presence could operate in any prejudicial manner.

Appellant presented evidence tending to show that the limestone lying under the condemned 33.81 acres would not be reached for quarrying for about thirty years, assuming normally expected operation of the quarry. We consider this evidence competent as one of the factors which would be taken into acount in a transaction between a willing buyer and seller.

We do not reach the question relating to the supersedeas bond required of appellant. Since the action of the trial court in this case CR 81A has become effective. Any questions arising by reason of that situation are reserved.

The judgment is reversed for proceedings consistent with this opinion.

MILLIKEN, C. J., dissenting.

PALMORE, J., dissenting.

PALMORE, Judge (dissenting in part).

Insofar as the phase of the majority opinion holding that the assignment of a value to the limestone in place was inadmissible apparently amounts to a flat condemnation of this type of testimony, Chief Justice MILLIKEN and I respectfully dissent from

it. If there is a market for mineral rights as such, we see no objection to evidence of their value. In large areas of Kentucky coal rights are commonly bought and sold separately. No man about to buy a tract of land in such an area could sensibly evaluate it independent of the prevailing market value of the coal rights. We agree that the witness ought not be permitted to give this value without first estimating the sale value of the whole property, so that the part must be considered in the perspective of the whole; but if he is able to keep the value of a *readily saleable part of or interest in* a particular piece of real estate in proper focus, it is one of the factors bearing upon the value of the whole, and is fundamentally competent from an evidentiary standpoint. We all know that professional appraisers consider it; why force them to pretend they do not?