**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**Roy DALE et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 15, 1967.

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Richard H. Peek, Dept. of Highways, Frankfort, Mark Anderson, Elizabethtown, for appellant.

Davis Williams, Munfordville, for appellees.

DAVIS, Commissioner.

The Department of Highways appeals from a judgment awarding the appellees $21,550 in this condemnation proceeding. Three bases for reversal are presented: (1) Some of the witnesses for appellees "price tagged" elements of damage and considered noncompensable factors in arriving at values; (2) witnesses for appellees lacked qualifications to offer expert testimony in the case; and (3) the verdict is excessive and unsupported by evidence of probative value.

The appellees own a farm which, before the taking, contained 159 acres situated on Kentucky Highway 335 with a dwelling house, two barns, and five or six outbuildings. The property lies about six miles south of Munfordville and approximately four miles north of Cave City. The land taken in this proceeding comprises 35.1 acres for the right-of-way and 4.3 acres for permanent easements. The highway for which the land is needed is Interstate

Highway 65, a nonaccess road. An interchange complex is to be constructed upon the right-of-way being acquired in this action. After the taking, the farm will lie in four disconnected tracts, one of which is a 6.39-acre, landlocked tract. The other three tracts remaining will contain 61.24 acres, 36.55 acres, and 19.83 acres. All of the buildings except a tenant house are within the right-of-way and are taken by the Department.

The witnesses for the Department testified that before the taking the value of the entire tract was $30,000 to $32,650. The same witnesses expressed their opinions of after value as $60,000 to $63,800, reflecting a *plus* difference of $30,000 to $31,150 more after value than before value. These witnesses premised their opinions on the claimed adaptability of the remaining land for valuable commercial sites upon the interchange. They cited numerous transactions around interchanges which they spoke of as being valid, comparable sales.

For the landowners, five evaluation witnesses testified and related before values extending from $36,643.60 to $52,500. The range of the after values expressed by these witnesses was from $11,596.40 to $22,000. The difference in before and after values as stated by the landowners' witnesses runs from $19,083.20 to $37,542.57.

The jury fixed the before value at $36,258 and the after value at $14,708 in arriving at its verdict of $21,550.

The view we have of the case makes it unnecessary to consider in detail the first and third points relied upon for reversal by appellant. It is our conclusion that there is merit in the second point advanced as we shall undertake to demonstrate. It will be observed that there is an extreme disparity in the after values as given by the witnesses for the litigants. As noted, the Department presented evidence tending to prove that there is marked increase in after value because of the adaptability of the remaining land for interchange commercial sites.

The witnesses for the landowners generally recognized that in some instances interchange property produces extraordinarily high prices, but most of them expressed the view that the amount of local traffic using the interchange would be too little to make the subject property attractive for the interchange market. Some of the witnesses for the landowners also expressed doubt that the remaining land would afford sufficient frontage to make it attractive as interchange property.

In looking to the qualifications of the landowners' witnesses insofar as their expertise concerning interchange property is concerned, we find that the witnesses disclaimed knowledge sufficient to qualify themselves. Under pain of tedium we quote the following from the record.

Witness Bobby Dale:

"34 You may be right sir, but how much do you think it's going to bring since the interstate went through?

A I don't know.

35 You checked the prices along these interchanges?

A No, sir."

Witness Robert Johns:

"Q1 Are you acuqainted (sic) with how property is selling around these interchanges?

A I don't know a great deal about that other than what I heard. I don't know too much for sale. I do know some in Munfordville here. That is about all.

2 You haven't checked into any of that?

A I don't have no reason to do so."

Witness Earl Jones:

"6 You don't think these oil companies in part depend on interstate traffic?

A They do for their profit. They want enough local traffic to pay expenses.

7  Let me ask you about the Munford-ville interchange.  How many buildings have gone up there?

A  Four or five.

8  Do you think they depend on local traffic?

A  No, they have that feeder off there.

9  How long is that going to last?

A  I don't know.

10  They will get all of it paid for in that length of time?

A  Yes.

11  That is your opinion?

A  Yes, sir.

12  You don't think the Munfordville Interchange is depending on interstate traffic?

A  It will get a percentage of interstate traffic.

13  All the interstate traffic comes off there now?

A  Yes, sir.

14  Do you know about the Standard Oil sale of $99,000?

A  No, sir.

15  Do you know about Humble Oil buying 200 foot lot for $66,000?

A.  No, sir."

Witness Paul Page:

"81  Have you made any study of any interchange property other than that at Cave City?

A  I have done some appraising for some of the oil companies.

82  You have done some appraising for whom?

A  Oil companies.  No, not pertaining to interchanges.  No, sir, I haven't made any study of any other interchanges, more than just merely knowing of two or three like I have these up above here that I told you I didn't know anything about, except Cave City and Park City.

83  But you didn't apply that to this interchange.  You didn't attempt to apply any commercial usage to this interchange at Horse Cave?

A  No, sir."

Witness George Lobb:

"71  Well, are you acquainted with the sale of property around these interchanges, Mr. Lobb?

A  No, sir.  I am not.  I don't know what land sells for around interchanges.  I ain't going to buy none."

■■■■  It is significant that the jury's after value of $14,708 is lower than the after value fixed by any of the witnesses for appellees except witness Lobb, who fixed the after value at $11,596.40.  It is patent from Mr. Lobb's evidence that he lacked any background which would qualify him to testify as an expert respecting interchange property values.  In Com., Dept. of Highways v. Fister, Ky., 373 S.W. 2d 720, we discussed the matter of prerequisite qualifications for an expert appraisal witness in real estate cases  There we departed from the former rule which had permitted appraisal testimony from a property owner without reference to his general qualifications.  It seems apparent that the appraisal witnesses for the landowners pointed out their own lack of appropriate qualifications insofar as the evaluation of interchange property is concerned.  It follows that the verdict premised upon evidence heard from the lips of these unqualified witnesses and flying in the face of widely divergent evidence adduced through qualified witnesses may not stand.  The evidence required to support the verdict does not possess the quantum of probative value for that purpose.  Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472;

Com., Dept. of Highways v Williams, Ky., 383 S.W.2d 687.

As respects the assertion that some of the witnesses for appellees improperly "price tagged" in making their appraisements, we direct attention to Com., Dept. of Highways v. Staton, Ky., 396 S.W.2d 766, and authorities therein cited. Upon another trial care will be taken to apply the principles set out in Com., Dept. of Highways v. Cardinal Hill Nursery, Inc., Ky., 380 S.W.2d 249; Com., Dept. of Highways v. Wireman, Ky., 388 S.W.2d 606; and Com., Dept. of Highways v. Stamper, Ky., 345 S.W.2d 640. We reserve without decision whether any of the evidence given at the first trial should have been stricken for noncompliance with the rules under discussion, and we reserve without decision the claimed excessiveness of the verdict.

The judgment is reversed for further proceedings consistent with this opinion.

WILLIAMS, C. J., and EDWARD P. HILL, MILLIKEN, MONTGOMERY and STEINFELD, JJ., concur.